
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 75499-8-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JESUS SANTIAGO RAMIREZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: March 5, 2018 |
| | ) | |

MANN, J. — Jesus Ramirez was convicted of first degree assault with a firearms enhancement for the December 2012 shooting of Eric Barcenas-Mora. Ramirez appeals his conviction contending that the trial court erred in allowing evidence of his other crimes, wrongs, or acts that should have been excluded under ER 404(b). We agree, reverse Ramirez's conviction, and remand for a new trial.

## FACTS

During the evening of December 20, 2012, a group of about 10 men was gathered outside of the Washington Park Apartments in Kent. The men were split into 2 groups of about 5 each and separated by about 15 feet. Everyone was apparently drinking. Barcenas-Mora was in one group and Ramirez was in

the other group. Barcenas-Mora and Ramirez had met previously through a mutual friend.

As Barcenas-Mora stood talking to his friends, he heard a gunshot, blacked out briefly, and fell to the ground. Barcenas-Mora had been shot in the abdomen. A responding police officer spoke to Barcenas-Mora at the scene and Mora said he did not know who shot him. Powder burn marks on Barcenas-Mora's shirt and flesh indicated that the shot had been fired at close range. The police found no physical evidence tying anyone to the shooting.

At trial, the State presented testimony from one of the investigating officers stating that during a post-shooting visit at the hospital Barcenas-Mora told the detective that he saw Ramirez pull a gun out of his pocket, extend his arm towards Barcenas-Mora, and heard Ramirez say "brake yourself." The State also presented testimony that during the hospital visit Barcenas-Mora identified Ramirez as the shooter from a photomontage.

At trial, Barcenas-Mora explained that he was reluctant to testify because "I'm not going to blame someone that didn't do nothing or that I don't know of . . . Because I don't know who did it." Barcenas-Mora denied having seen Ramirez with a gun or that he had ever identified Ramirez as the shooter. He testified that he had identified Ramirez not as the person who shot him but just as a person who was there at the time he was shot and the only person he recognized from the photomontage.

Detectives responding to the scene interviewed several witnesses, including Oscar Mendoza. Mendoza provided a recorded statement. In his initial

statement, Mendoza reported that he saw Ramirez and Barcenas-Mora arguing, then pushing and shoving each other before the shooting. At trial, however, Mendoza testified that he remembered the two men arguing but denied seeing them pushing or shoving each other.

Mendoza testified at trial that he saw Ramirez draw the gun, but he did not know from where, or which hand he had used. He also stated he did not see him raise or point the gun, he only claimed to see smoke after the shot. He also saw Ramirez run away after the shooting. Although Mendoza later testified that he was turned away from Ramirez and did not see Ramirez holding a gun.

The State also presented testimony that Mendoza picked Ramirez as the shooter in a double-blind photomontage. At trial, Mendoza denied having ever looked at a photomontage. After Mendoza denied reviewing the photomontage, the State asked if testifying was difficult for him. Mendoza responded that the questioning was not difficult but talking about the shooting was difficult because "It just brings up animosity. High blood pressure." The State then asked if this was the first time he had seen Ramirez since the incident and Mendoza said, "Sadly, yes. I would love not to see him ever again." When asked why, Mendoza responded, "I dislike him for personal reasons." The State asked that the jury be excused so that they could question Mendoza about this statement.

Outside of the jury's presence, Mendoza revealed that a few months before the Barcenas-Mora shooting, Ramirez "was really belligerent and also pulled a gun on me[.]" The State asked if "that's why you're having difficulty

today" and Mendoza agreed. However, Mendoza stated he was not scared to testify and that he was not scared of Ramirez.

The State and Ramirez agreed that Mendoza's statements were ER 404(b) evidence. Ramirez opposed allowing the testimony as it would be far more prejudicial than probative. The State, however, argued that the testimony should come in to explain Mendoza's bias and animosity toward Ramirez. The State argued that the information was probative of Mendoza's bias to explain why Mendoza was "minimizing" his trial testimony, as compared to his prior statements. Defense counsel again objected, arguing the evidence was far more prejudicial than probative, and agreed not to cross-examine Mendoza about his bias.

The trial court originally determined the evidence was admissible under ER 404(b) because it was offered for the purpose of explaining Mendoza's "animosity towards the defendant." The trial court opined that "[t]he defense doesn't get to just say, you have animosity, don't believe him, with the State not being allowed to articulate in more detail what that animosity is." The trial court believed "the jury will be unable to really evaluate that whether his testimony should not be believed because of that unless they know something about the animosity." The court agreed that the evidence was "extremely prejudicial," but stated "[t]he question is, is it relevant, and is it relevant on the issue on bias of this witness."

The trial court did determine that evidence where Ramirez threatened Mendoza with a gun while intoxicated was too prejudicial. Therefore, the court

limited the evidence that would be admitted, only allowing the State to ask whether Ramirez threatened to "seriously harm" Mendoza and whether Ramirez had a "weapon" when that threat was made.

The trial court later stated, "I do believe it is admissible under 409 [sic], again, for the purpose of establishing the motive of this witness to lie." The trial court later opined that under State v. Lubers,[1] evidence that goes to a witness's credibility is not analyzed under 404(b), but is instead only analyzed "under the issue of relevancy." However, the trial court determined, "whether you analyze it under 404(b) or whether you analyze—whether it's relevant, I think it's the same analysis that has to be made." The trial court then stated it found, by a preponderance of the evidence, that the prior incident occurred; and that the testimony was relevant because Mendoza was a crucial "identification witness" and "the credibility of a witness is important." The court concluded that because the testimony went to the credibility of the witness, it was not subject to ER 404(b) and it was not excluded, but was instead "presumed included."

When the jury returned, the trial court read a limiting instruction:

> The following testimony in this case is admitted for only a limited purpose. This evidence consists of Oscar Mendoza's testimony regarding how his relationship with the defendant ended and may be considered by you only for the purpose of evaluating Oscar Mendoza's credibility. You may not consider it for any other purpose. Any discussion of the evidence during your deliberations must be consistent with this limitation.

---

[1] See State v. Lubers, 81 Wn. App. 614, 623, 915 P.2d 1157 (1996) (holding the trial court did not err in foreclosing the defendant from examining his girlfriend, Juanita Black, concerning evidence that there was a feud between Black and the victim's family as a motive for the victim to fabricate the rape accusation).

The State then resumed its questioning of Mendoza:

Q:      Is the reason that you have—you said some animosity towards him because he threatened you—excuse me—he threatened to seriously harm you in the past?
A:      Yes. Correct.
Q:      Was this about two months before the shooting occurred?
A.      No. I don't recall when but it was a while ago.
Q:      Around that time?
A:      Yes.
Q:      When he threatened you, at this time, he had a weapon?
A:      Yes.
Q:      Prior to him—before he threatened you like this, you two were acquaintances?
A:      Yes.
Q:      You weren't super good friends but you were on good terms?
A:      In the streets, yes.
Q:      Okay. In the streets? After that, is that when your relationship with him ended?
A:      Yes.

The State did not ask any questions about whether or how Mendoza's animosity toward Ramirez affected the truthfulness of his testimony.

## ANALYSIS

*Admissibility of Ramirez's Prior Conduct*

Ramirez argues first that the trial court erred in allowing Mendoza to testify about Ramirez's previous act threatening him with a weapon because the testimony was evidence of other crimes, wrongs, or acts that should have been excluded under ER 404(b). We agree.

A.      Standard of Review

The interpretation of an evidentiary rule is a question of law that we review de novo. State v. Ashley, 186 Wn.2d 32, 38, 375 P.3d 673 (2016). If the trial court has interpreted the evidentiary rule correctly, then we review the trial court's

-6-

decision to admit or exclude evidence for abuse of discretion. State v. Gresham, 173 Wn.2d 405, 419, 269 P.3d 207 (2012). An abuse of discretion occurs when "the trial court's decision is manifestly unreasonable or based upon untenable grounds or reasons," such as the misconstruction of a rule. State v. Gunderson, 181 Wn.2d 916, 922, 337 P.3d 1090 (2014). We also consider whether a reasonable judge would rule as the trial judge did. State v. Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002).

B.     ER 404(b)

Our analysis begins with an understanding of ER 404(b). ER 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

"'ER 404(b) is a categorical bar to admission of evidence [of a prior bad act] for the purpose of proving a person's character and showing that the person acted in conformity with that character.'" Gunderson, 181 Wn.2d at 922 (quoting Gresham, 173 Wn.2d at 420). "The same evidence may, however, be admissible for any other purpose, depending on its relevance and the balancing of its probative value and danger of unfair prejudice." Gresham, 173 Wn.2d at 420.

To admit evidence of the defendant's prior misconduct, "the trial court must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime

charged, and (4) weigh the probative value against the prejudicial effect."

Gresham, 173 Wn.2d at 421. "This analysis must be conducted on the record."

State v. Foxhoven, 161 Wn.2d 168, 175, 163 P.3d 786 (2007). "The party

seeking to introduce the evidence has the burden of establishing the first,

second, and third elements." Ashley, 186 Wn.2d at 39. Any doubt as to the

admissibility of prior bad act evidence must be resolved in favor of exclusion.

Thang, 145 Wn.2d at 642. If the evidence is admitted, the trial court must also

give a limiting instruction to the jury explaining how the evidence is to be used.

Gunderson, 181 Wn.2d at 923.

C.    Application to Mendoza's Testimony

The trial court held that ER 404(b) did not prohibit Mendoza's testimony

about Ramirez's prior acts because it went to the "witness's motive" and not the

"defendant's motive," and the "witness's motive is not covered by ER 404(b)". It

is true that impeachment evidence of a witness is generally covered by ER 609[2]

and not covered by ER 404(b). However, ER 609 permits attacking the credibility

of a witness with "evidence that the witness has been convicted of a crime." ER

609(a) (emphasis added). Clearly, the evidence admitted here was of Ramirez's

prior bad act, and not Mendoza's. ER 609 does not apply to allow the testimony

to challenge Mendoza's credibility.

Citing State v. Lubers, 81 Wn. App. 614, 915 P.2d 1157 (1996) and State

v. Perez-Valdez, 172 Wn.2d 808, 265 P.3d 853 (2011), the trial court also

---

[2] The trial court actually stated that this evidence might come in under ER 409. ER 409 is a rule regulating "Payment of Medical and Similar Expenses." As that rule is irrelevant here, we presume the trial court meant ER 609.

incorrectly concluded that because Mendoza's testimony about Ramirez's prior act was offered for Mendoza's credibility, it was not reviewed under ER 404(b) and only needed to be found to be relevant. Both cases are inapposite.

In Lubers, the defendant was seeking to admit evidence through a third-party witness of the victim's bias against the defendant in order to demonstrate that the victim had fabricated her rape accusation against the defendant. 81 Wn. App. at 623-24.

Similarly, in Perez-Valdez, a child rape case, the defendant foster care provider sought to introduce evidence that the victims had committed arson in the foster home they subsequently lived in as a way to be removed from the home. The defendant sought to introduce the evidence to demonstrate that they had falsely accused him of rape in order to get out of his foster home. Perez-Valdez, 172 Wn.2d at 814. These cases do not address the situation here and neither case can reasonably be interpreted to allow the State to offer evidence of a defendant's prior bad acts to bolster or undermine a witness's credibility.

While not discussed by the trial court, Washington courts have considered other, less traditional, theories that have allowed 404(b) evidence for the purpose of addressing a witness's credibility. For example, in cases involving domestic violence, admission of the defendant's prior acts of domestic violence is often admissible to assist the jury in evaluating the victim's credibility. State v. Magers, 164 Wn.2d 174, 186, 189 P.3d 126 (2008) (emphasis added). However, this rule is specifically limited to domestic violence cases when the complaining witnesses has given "conflicting" or "inconsistent" statements. Magers, 164 Wn.2d at 186.

See also Gunderson, 181 Wn.2d at 924 (declining to extend Magers to the situation where the complaining witness did not recant). Washington courts have also admitted gang evidence to explain a witness's fear and unwillingness to cooperate with police. State v. Scott, 151 Wn. App. 520, 528, 213 P.3d 71 (2009). Neither of these rules apply in this case. This case does not involve domestic violence or even a victim giving inconsistent statements. Mendoza also specifically testified that he was not afraid of Ramirez and that he was not afraid to testify. Mendoza was similarly not afraid to aid the police after the shooting, as he readily spoke to the police about what he witnessed

The State has not identified a single case that has allowed evidence of a defendant's prior bad acts to be admitted for the sole purpose of bolstering the credibility of a State's witness. Where no authorities are cited in support of a proposition, we assume that counsel, after diligent search, has found none. DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). We have also not found a case that supports this theory. We conclude that bolstering a State witness's credibility, without any other extenuating circumstances, is not a proper purpose for admitting ER 404(b) evidence.

Moreover, even if the purpose provided was a proper reason for admitting this evidence, the actual testimony presented fell far short of proving the connection between Ramirez's prior bad act evidence and the purpose for which it was admitted. See Scott, 151 Wn. App. at 527. For evidence to be relevant, the purpose for which the evidence is sought to be introduced must be "of consequence to the outcome of the action" and the evidence must tend "to make

the existence of the identified fact more probable." State v. Brown, 113 Wn.2d 520, 526, 782 P.2d 1013 (1989), opinion corrected, 787 P.2d 906 (Wash. 1990). Ramirez was charged with assault in the first degree while armed with a firearm. The essential elements of that crime require the State to prove "with intent to inflict great bodily harm," Ramirez assaulted Barcenas-Mora with a firearm or by any force or means likely to produce great bodily harm or death. RCW 9A.36.011(a).

The trial court and the State argued the evidence was relevant because Mendoza was a crucial "identification witness" and "the credibility of a witness is important." However, once the evidence was admitted, the State did not pursue any line of questioning that linked Mendoza's identification of Ramirez with the prior incident. The State also did not ask how the incident might have affected Mendoza's trial testimony. In the end, the State did not clearly identify their purpose for admitting such evidence, or whether this evidence would make Mendoza appear more credible or less credible to the jury. As the State never sought to connect the evidence with its stated purpose, Mendoza's credibility, the evidence only informed the jury that Mendoza's relationship with Ramirez ended after Ramirez threatened him with a weapon. On its own, this evidence only makes Mendoza's identification of Ramirez more probable because "[e]vidence that the accused committed an uncharged crime of the same type as the crime charged tends to prove that the accused has a propensity to commit that specific type of crime." See State v. Herzog, 73 Wn. App. 34, 44, 867 P.2d 648 (1994)

(emphasis added). Specific propensity evidence, serving no other legitimate purpose, is categorically barred by ER 404(b). Gresham, 173 Wn.2d at 420-21.

Finally, Mendoza's testimony was also substantially more prejudicial then probative. The evidence that Ramirez previously threatened to harm Mendoza with a weapon is substantially similar to his current charge of assault with a firearm and is inherently prejudicial. When evidence is highly prejudicial, the trial court needs to reasonably determine that the probative value of the evidence was similarly high. State v. Arredondo, 188 Wn.2d 244, 263, 394 P.3d 348 (2017). Here, the trial court repeatedly acknowledged that the evidence was highly prejudicial, but concluded the evidence was admissible because it was relevant to an identification witness's credibility. Some relevancy of bias was not sufficient to overcome the inherent prejudice of this evidence. This evidence was highly prejudicial, and only barely probative to demonstrate Mendoza's bias. The trial court erred in admitting Mendoza's testimony of Ramirez's prior bad act.

D.    The Error was not Harmless

Even if the trial court erred in admitting the evidence, we still review whether the error was harmless. We review erroneous admission of ER 404(b) evidence under the nonconstitutional harmless error standard. State v. Ray, 116 Wn.2d 531, 546, 806 P.2d 1220 (1991). Reversal is required only if there is a reasonable probability that the outcome of the trial was materially affected by the error. Ray, 116 Wn.2d at 546. We also note that the trial court did provide a limiting instruction in this case, and we generally presume that juries follow the

-12-

court's instructions. State v. Weber, 99 Wn.2d 158, 164-65, 659 P.2d 1102 (1983).

In this case, we cannot hold that this error was harmless. The evidence informed the jury that Ramirez had recently threatened another acquaintance with a weapon in a case where he was being charged with assaulting an acquaintance with a firearm. No instruction can "remove the prejudicial impression created [by evidence that] is inherently prejudicial and of such a nature as to likely impress itself upon the minds of the jurors." State v. Miles, 73 Wn.2d 67, 71, 436 P.2d 198 (1968). This error was particularly egregious as Mendoza's testimony, that was often vague and inconsistent, was essentially the State's entire case against Ramirez. Because of the limited evidence presented in this case, we hold there is a reasonable probability that the outcome was materially affected by the evidence that Ramirez had previously threatened Mendoza with a weapon. Accordingly, we reverse.

*Sufficiency of the Evidence*

Ramirez next contends that the charges should be dismissed because there was insufficient evidence to convict him of the assault. We disagree.

"A sufficiency challenge admits the truth of the State's evidence and accepts the reasonable inferences to be made from it." State v. O'Neal, 159 Wn.2d 500, 505, 150 P.3d 1121 (2007). Evidence is sufficient if, "'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (quoting

Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)). Circumstantial and direct evidence carry equal weight. State v. Goodman, 150 Wn.2d 774, 781, 83 P.3d 410 (2004). "Credibility determinations are for the trier of fact and are not subject to review." State v. Thomas, 150 Wn.2d 821, 874, 83 P.3d 970 (2004). Accordingly, we "defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." Thomas, 150 Wn.2d at 874-75. We will reverse a conviction "only where no rational trier of fact could find that all elements of the crime were proved beyond a reasonable doubt." State v. Smith, 155 Wn.2d 496, 501, 120 P.3d 559 (2005).

Ramirez has not met this standard. There is evidence that both Mendoza and Barcenas-Mora identified Ramirez as the shooter from a photomontage. There is evidence that Mendoza witnessed Ramirez pull a gun, saw smoke coming from the gun after the shot, and saw Ramirez run away directly after the shot was fired. Accepting all of the State's evidence as true, viewing the evidence in the light most favorable to the State, and deferring to the trier of fact on matters of credibility, there is sufficient evidence for a rational trier of fact to find that all of the elements of assault with a firearm were proven beyond a reasonable doubt.

We reverse and remand for a new trial.

_Mann, J._

WE CONCUR:

_Cox, J_

_Becker, J._