

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE **NOV 2 0 2014**

7anhurst, Q.

for *CHIEF JUSTICE*

This opinion was filed for record
at 8:00Am on NOV. 20, 2014

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 89297-1 |
| | ) | |
| v. | ) | |
| | ) | En Banc |
| DANIEL SCOTT GUNDERSON, | ) | |
| | ) | |
| Petitioner. | ) | Filed ___ **NOV 2 0 2014** ___ |
| | ) | |

GONZÁLEZ, J.—The State charged Daniel Scott Gunderson with domestic violence felony violation of a court order for a September 2010 altercation between himself and Christina Moore, his ex-girlfriend. At trial, Ms. Moore testified that no assault occurred. Although she had not made any prior statement about the incident, let alone an inconsistent statement, the State sought to introduce evidence of Gunderson's prior domestic violence against her to impeach her. The trial judge admitted this evidence over Gunderson's ER 404(b) objection. Gunderson argues that the trial court should have excluded evidence of his prior bad acts under ER 404(b). We agree and reverse.

FACTS

Gunderson and Christina Moore dated for about seven years and have a daughter together. In September 2010, Christina and her daughter were living in Seattle with Bonnie Moore, Christina's mother.[1] At that time, Gunderson was living in Longview, Washington. On September 15, 2010, Gunderson drove up to Seattle to pick up his daughter and take her back to Longview for a visit. A no contact order prevented Gunderson and Christina from communicating, so arrangements regarding the visit were made by Bonnie and Gunderson. That night, Gunderson stayed at Bonnie's house, planning to leave with his daughter the following morning.

As Gunderson left the next morning, Bonnie, Christina, and Gunderson had an altercation and Bonnie called the police. By the time officers arrived, Gunderson, Christina, and their daughter had driven away in Gunderson's truck. Bonnie told the responding officers that Gunderson hit her and Christina. Gunderson was charged with domestic violence felony violation of a court order under RCW 26.50.110(1) and (4).

At trial, the State presented a recording of the 911 call, Bonnie's police statement, Bonnie's testimony, and Christina's testimony, among other things. Bonnie testified that they had scuffled in the parking lot as Gunderson tried to leave with his daughter. She recalled Christina, Gunderson, and herself grabbing and

---

[1] Because Christina and Bonnie share a surname, we refer to them by their first names. We intend no disrespect.

wrestling in and around Gunderson's truck. According to Bonnie, she did not want the truck to leave and was struggling to take the keys. At some point in the commotion, Gunderson was sitting in the driver's seat, ducking from Bonnie. On cross-examination, Bonnie told the court that she did not see Gunderson hitting Christina and that her memory was "kind of a big blur." Transcript of Proceedings (TP) (Oct. 20, 2011) at 37. On redirect, she testified that Gunderson was "[p]robably defending himself." *Id.* at 44. Bonnie said she called the police because she was concerned about Christina being in the truck with Gunderson.

Though neither the 911 tape nor its transcript are part of the record before us, it was played for the jury during Bonnie's testimony. Based on the State's characterization of the tape in its closing argument, it appears that Bonnie was panicked during the 911 call and told the operator that Gunderson had hit Christina.

During the direct examination of one of the responding officers, the State introduced the statement that he took from Bonnie shortly after she had called the police. In it, Bonnie told the officer that Gunderson had hit her with a closed fist, kicked her, and also hit Christina. Bonnie also told the officer that as the truck was pulling away, she saw Gunderson hitting Christina. The defense did not object to the officer reading the statement to the jury.

Christina's testimony painted a contrasting picture. Christina testified that when she came outside, she saw Gunderson and Bonnie "arguing about where he was going and when he was going to bring [the daughter] back." TP (Oct. 24, 2011) at 68.

3

According to Christina, the episode did not involve physical violence. She testified that Gunderson did not hit her or Bonnie. She also told the court that she willingly climbed into Gunderson's truck and went to his home in Longview.

Christina's testimony was not inconsistent with any prior statements that she had made to the police or the prosecutor's office. Indeed, Christina was never asked to give a statement regarding this case before trial. Nonetheless, the State sought to admit evidence of two prior domestic violence episodes involving Gunderson and Christina that resulted in his arrest and conviction in order to impeach Christina's testimony. Specifically, the State sought to challenge Christina's credibility, believing that Christina had minimized what had happened between her and Gunderson. Gunderson objected under ER 404(b). The trial judge ruled the evidence admissible, finding that (1) a preponderance of the evidence supported the conclusion that the two incidents occurred, (2) the purpose of the evidence was impeachment of Christina's credibility, (3) the evidence was relevant, and (4) its probative value outweighed its prejudicial effect because it went to witness credibility. As a result of the trial court's order, the jury received evidence of the two prior domestic violence incidents through Christina's testimony. The judge gave a limiting instruction, telling the jury that this "testimony was only allowed for the purposes of evaluating [Christina's] testimony . . . and for no other purpose." *Id.* at 131. The jury convicted Gunderson of domestic violence felony violation of a court order. The Court of Appeals affirmed. *State v. Gunderson*, noted at 175 Wn. App. 1066, 2013 WL

4

3990888, at *4. We granted review. *State v. Gunderson*, 179 Wn.2d 1013, 319 P.3d 800 (2014).

## ANALYSIS

### A. *Standard of review*

Evidence of a defendant's prior bad acts is not admissible to show the defendant has a propensity to commit crimes but may be admissible for some other proper purpose. ER 404(b). In this case, the trial judge admitted Gunderson's criminal history to impeach Christina's testimony. While impeachment can be a proper purpose, Gunderson argues that it should be limited to cases where the witness's own conduct or statements raise questions of credibility. To review an evidentiary decision, we determine what evidentiary rules apply and then determine whether the trial judge acted within the discretion accorded by those rules. We review the interpretation of an evidentiary rule de novo as a question of law. *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003) (citing *State v. Walker*, 136 Wn.2d 767, 771-72, 966 P.2d 883 (1998)). The trial court's decision to admit or exclude evidence is reviewed for abuse of discretion. *Id.* (citing *State v. Lough*, 125 Wn.2d 847, 856, 889 P.2d 487 (1995)). But "[t]here is an abuse of discretion when the trial court's decision is manifestly unreasonable or based upon untenable grounds or reasons," such as the misconstruction of a rule. *State v. Brown*, 132 Wn.2d 529, 572, 940 P.2d 546 (1997) (citing *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615

(1995)). We also consider whether a reasonable judge would rule as the trial judge did. *State v. Vy Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002).

B. *Admissibility of prior acts of domestic violence*

Gunderson argues that because Christina did not recant or contradict any of her prior statements, the trial court erred in admitting evidence of his prior acts of domestic violence against her. *See* Suppl. Br. of Pet'r at 5-9. Gunderson believes this error warrants reversal and a new trial. *Id.* at 13. We agree that it was error. Because this error was not harmless, we reverse and remand for a new trial.

1. *Exclusion under ER 404(b)*

"ER 404(b) is a categorical bar to admission of evidence [of a prior bad act] for the purpose of proving a person's character and showing that the person acted in conformity with that character." *State v. Gresham*, 173 Wn.2d 405, 420, 269 P.3d 207 (2012) (citing *State v. Saltarelli*, 98 Wn.2d 358, 362, 655 P.2d 697 (1982)). But "[t]he same evidence may, however, be admissible for any other purpose, depending on its relevance and the balancing of its probative value and danger of unfair prejudice." *Id.* (emphasis omitted).

For evidence of prior bad acts to be admissible, a trial judge must "(1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect." *Thang*, 145 Wn.2d at 642 (citing *Lough*, 125

6

Wn.2d at 853). "This analysis must be conducted on the record." *State v. Foxhoven*, 161 Wn.2d 168, 175, 163 P.3d 786 (2007) (citing *State v. Smith*, 106 Wn.2d 772, 776, 725 P.2d 951 (1986)). The trial court must also give a limiting instruction to the jury if the evidence is admitted. *Id.* (citing *Lough*, 125 Wn.2d at 864). The trial court conducted the proper four-step analysis on the record and gave the jury an appropriate limiting instruction. Nonetheless, by not excluding the evidence, the trial court abused its discretion.

Gunderson argues that the probative value of the evidence at issue here is outweighed by its significant prejudicial effect. Gunderson is correct. Essentially, he challenges the trial court's conclusion under the fourth prong of the ER 404(b) analysis, which requires a court to weight the probative value against the prejudicial effect. This analysis, though done in the context of an ER 404(b) objection, implicates ER 403. *See Saltarelli*, 98 Wn.2d at 361 ("ER 404(b) is only the starting point for an inquiry into the admissibility of evidence of other crimes; it should not be read in isolation, but in conjunction with other rules of evidence, in particular ER 402 and 403."). Here, we agree with Gunderson that the prejudice of admitting a prior domestic violence incident involving Gunderson and Christina outweighs its probative value.

In *State v. Magers*, we took great care to specifically establish that "evidence that [the defendant] had been arrested for domestic violence and fighting and that a no-contact order had been entered following his arrest was relevant to enable the jury

to assess the credibility of [the complaining witness] *who gave conflicting statements about [the defendant's] conduct.*" 164 Wn.2d 174, 186, 189 P.3d 126 (2008) (emphasis added).[2] In the present case, Christina gave no conflicting statements about Gunderson's conduct.

The State concedes that Christina's testimony was internally consistent but argues that the trial court's admission of Gunderson's prior bad acts was nonetheless proper because other evidence contradicted Christina's account. We decline to extend *Magers* to apply in such circumstances. That other evidence from a different source

---

[2] We respectfully disagree with the dissent that Gunderson's criminal history is admissible under *Magers*. See dissent at 1-2. The facts in *Magers* were very different from those here. In *Magers*, Kha Magers entered the home of Carissa Ray, the alleged victim who had a no contact order against him, and threatened her with a sword. 164 Wn.2d at 178-79. When police arrived, she eventually told a responding officer that Magers was inside her house. *Id.* After this admission, Ray "started crying and stated that Magers is 'violent. He's going to hurt me. Please don't tell him that I told you that he was in there.'" *Id.* at 179 (quoting record). The responding officer testified that Ray looked traumatized. *Id.* After prosecutors charged Magers, Ray recanted the statement she gave the responding officer. *Id.* at 180. The underlying facts here are much different. Christina never spoke to officers or prosecutors and only gave one account of events on (or as far as we know, off) the stand. Also, unlike in *Magers*, the State in this case introduced no evidence of the witness's trauma. Nor do we find admission is appropriate under *State v. Grant*, 83 Wn. App. 98, 920 P.2d 609 (1996) or *State v. Baker*, 162 Wn. App. 468, 259 P.3d 270 (2011). In *Grant*, the defendant testified and the State sought to admit his domestic violence criminal history to impeach his credibility under ER 609(a). *Grant*, 83 Wn. App. at 103. The Court of Appeals affirmed on the grounds that the prior bad acts were admissible to explain the victim's "statements and conduct which might otherwise appear inconsistent with her testimony" and to explain why the victim permitted the defendant "to see her despite the no-contact order, and why she minimized the degree of violence." 83 Wn. App. at 106-08. Perhaps most importantly, "[t]he State sought to admit evidence of these dynamics through testimony of [the victim]'s therapist." *Id.* at 108. No expert was offered here to help the jury understand these dynamics. While *Baker* in passing suggests prior acts of domestic violence might always be admissible, the evidence in that case was clearly admissible to explain why the victim did not report prior times the defendant attempted to strangle her and to rebut the defendant's theory that the strangulation was accidental. 162 Wn. App. at 472, 474-75.

contradicted the witness's testimony does not, by itself, make the history of domestic violence especially probative of the witness's credibility. There are a variety of reasons why one witness's testimony may deviate from the other evidence in a given case. In other words, the mere fact that a witness has been the victim of domestic violence does not relieve the State of the burden of establishing why or how the witness's testimony is unreliable.[3]

Much like in cases involving sexual crimes, courts must be careful and methodical in weighing the probative value against the prejudicial effect of prior acts in domestic violence cases because the risk of unfair prejudice is very high. *See Saltarelli*, 98 Wn.2d at 363 (finding that "[a] careful and methodical consideration of relevance, and an intelligent weighing of potential prejudice against probative value is particularly important in sex cases, where the prejudicial potential of prior acts is at its highest"). To guard against this heightened prejudicial effect, we confine the admissibility of prior acts of domestic violence to cases where the State has established their overriding probative value, such as to explain a witness's otherwise inexplicable recantation or conflicting account of events. *See Magers*, 164 Wn.2d at 186. Otherwise, the jury may well put too great a weight on a past conviction and use the evidence for an improper purpose. *See State v. Brown*, 113 Wn.2d 520, 531, 782 P.2d 1013 (1989) (Brachtenbach, J., lead opinion). Accordingly, we decline to extend

---

[3] The blanket extension of *Magers* proposed by the dissent would create a domestic violence exception for prior bad acts that is untethered to the rules of evidence.

9

*Magers* to cases where there is no evidence of injuries to the alleged victim and the witness neither recants nor contradicts prior statements.[4] It was manifestly unreasonable, and therefore an abuse of discretion, for the trial judge to admit evidence of Gunderson's past domestic violence on the record before us.

2. *Harmless error analysis*

We now turn to whether the improper admission of the evidence was harmless. In analyzing the erroneous admission of evidence in violation of ER 404(b), we apply the nonconstitutional harmless error standard. *Gresham*, 173 Wn.2d at 433 (citing *Smith*, 106 Wn.2d at 780). This requires us to decide whether "'within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'" *Id.* (internal quotation marks omitted) (quoting *Smith*, 106 Wn.2d at 780). Here, it is reasonably probable that the admission of the two domestic violence convictions materially affected the outcome of the trial.

The State charged Gunderson with a felony violation of a court order but included the lesser charge of violation of a no contact order in the jury instructions. The only difference between the two crimes is that there must have been an assault to maintain a conviction for the felony violation of a court order. *Compare* RCW

---

[4] This opinion should not be read as confining the requisite overriding probative value exclusively to instances involving a recantation or an inconsistent account by a witness. We are inclined to agree with the dissent that it may be helpful to explain the dynamics of domestic violence when offered in conjunction with expert testimony to assist the jury in evaluating such evidence. *See, e.g., Grant*, 83 Wn. App. at 108. We decline, however, to establish an advisory list of possible scenarios.

26.50.110(1), *with* RCW 26.50.110(4). It is this distinction that makes it reasonably probable that the admission of Gunderson's prior convictions of domestic violence materially affected the outcome of the trial.

Neither of the two alleged victims testified that an assault occurred. Christina was unequivocal in stating that Gunderson did not hit her or Bonnie. Even Bonnie stated that Gunderson was "[p]robably defending himself" during the altercation at issue. TP (Oct. 20, 2011) at 44. Indeed, besides the evidence of Gunderson's prior domestic violence conviction, the State offered only a recording of Bonnie's 911 call and her subsequent statement to responding officers to establish that an assault had taken place. Although this evidence may be sufficient to find Gunderson guilty, it is reasonably probable that absent the highly prejudicial evidence of Gunderson's past violence the jury would have reached a different verdict. *See Gresham*, 173 Wn.2d at 433. Accordingly, we cannot say that the trial court's error was harmless and so Gunderson is entitled to a new trial.

CONCLUSION

We agree with Gunderson that the trial court erred in admitting evidence of his prior domestic violence convictions. Because Christina did not make conflicting statements and did not recant and the State did not articulate some other compelling justification, the probative value of this evidence is limited in comparison to its significant prejudicial effect. Not only was it manifestly unreasonable for the trial court to admit this evidence but also we find it reasonably probable that the jury

11

would have reached a different outcome. We reverse and remand to the trial court for further proceedings consistent with this opinion.

Gonzáles, J.

WE CONCUR:

_____     Wyggm, J.
                            _____

_____     _____
Clemmsm, J.                 Tock MCClel, J.

_____     _____
Oanh, J.                    Step, J.

_____     _____
Fairhurst, J.               Penoyer, J.P.T.

13

No. 89297-1

MADSEN, C.J. (dissenting)—The trial court properly applied our precedent and admitted evidence of prior acts of domestic violence between the defendant and the victim in order to assist the jury in judging the credibility of the testifying victim. Nevertheless, the majority finds that the trial court abused its discretion by admitting evidence of the history between the victim and the defendant because the victim was not a "recanting" witness. Because I see no basis for that limitation in our cases or in the reasons supporting the admission of such testimony, I dissent.

Discussion

In *State v. Magers*, 164 Wn.2d 174, 186, 189 P.3d 126 (2008), this court held that admission of the defendant's prior bad acts in the context of domestic violence, when offered to assist the jury in evaluating the credibility of a victim, is permissible under ER 404(b). This court adopted the rationale from a prior Court of Appeals opinion that "'"[t]he jury was entitled to evaluate [the victim's] credibility with full knowledge of the dynamics of a relationship marked by domestic violence and the effect such a relationship has on the victim."'" *Magers*, 164 Wn.2d at 186 (quoting 5D KARL B. TEGLAND, WASHINGTON PRACTICE: COURTROOM HANDBOOK ON WASHINGTON

EVIDENCE ch. 5, at 234-35 (2007-08) (quoting *State v. Grant*, 83 Wn. App. 98, 108, 920 P.2d 609 (1996))).

The majority recognizes the rule and its reason, but it limits such credibility evidence to cases where a victim recants. Because the victim here did not recant any testimony, it argues, the trial court erred by admitting evidence of the defendant's prior domestic violence convictions under ER 404(b). But, while the victim did not recant prior statements, her testimony on the stand did minimize the violence of the interaction she had with the defendant. The majority does not explain why it sees a difference in the dynamics of domestic violence between these two situations, nor do I see one.

Indeed, in *Grant*, the opinion from which *Magers*'s reasoning derives, the victim did not recant. Instead, the *Grant* court admitted evidence of prior assaults by the defendant to explain the dynamics of domestic violence and the seemingly inconsistent conduct on the part of the victim. As the court there explained:

> As is reflected in the present case, victims of domestic violence often attempt to placate their abusers in an effort to avoid repeated violence, and often minimize the degree of violence when discussing it with others. The Grants' history of domestic violence thus explained why Ms. Grant permitted Grant to see her despite the no-contact order, and why she minimized the degree of violence when she contacted Grant's defense counsel after receiving a letter from Grant, sent from jail. Ms. Grant's credibility was a central issue at trial. The jury was entitled to evaluate her credibility with full knowledge of the dynamics of a relationship marked by domestic violence and the effect such a relationship has on the victim.

*Grant*, 83 Wn. App. at 107-08 (footnote omitted).

In this case there was a domestic violence no contact order prohibiting the defendant from contacting the victim and her child. Despite the no contact order, the

2

victim and her mother arranged for the defendant to pick up the child at the mother's home. A "scuffle" broke out, and the mother called the police. Before the police arrived, the defendant drove away with the victim and the child. The mother, who tried to stop the defendant, was dragged about 75 feet. As she saw the defendant drive away, the victim's mother saw the defendant hit the victim. At trial, the victim said that she calmly entered the defendant's truck and drove away. The trial court allowed evidence of the defendant's prior assaultive behavior toward the victim to assist the jury in evaluating the victim's testimony, and the jury was instructed as to the limited purpose of the testimony.

The fact that patterns of domestic violence often instill a fear of retaliation in the victim if she testifies about the incident accurately to the jury applies equally to explain a victim who downplays the incident in the first instance as it does to one who recants prior testimony. The policy that this court adopted in *Magers* does not support limiting its application to instances of explicit recantation. Evidence of a history of domestic violence between the victim and the defendant leading to the defendant's prior conviction would certainly contextualize the victim's testimony in a helpful way for the jury, regardless of whether the victim recants or only minimizes.

A few years after our decision in *Magers*, the Court of Appeals in *State v. Baker*, 162 Wn. App. 468, 259 P.3d 270 (2011), rejected an argument similar to the one raised here: that there is a distinction between recanting victims and other victims of domestic violence. To the contrary, the court held that the rationale of contextualizing the relationship between the defendant and the victim by allowing the introduction of prior

3

violent acts between the parties applied equally to explain the victim's testimony on the stand. Baker, the defendant there, sought review in this court, but we denied his petition. *State v. Baker*, 173 Wn.2d 1004, 268 P.3d 942 (2011).

Besides lacking a basis for distinguishing between recanting and nonrecanting victims, the majority's new limitation is also at odds with other evidence rules. Although the majority argues that my view is untethered to the rules of evidence, majority at 9 n.3, it concedes that evidence of past domestic violence may be admissible if introduced through expert testimony. Majority at 10 n.4. I am unfamiliar with this novel expert witness exception to ER 404(b). Far from being untethered to the rules, admitting the testimony in this case fits well within the rules that govern impeachment, which allow great latitude in exploring bias and interest that might affect testimony. Generally, parties may impeach their own witnesses in any otherwise permissible manner except where their primary purpose is to introduce otherwise inadmissible evidence. *See State v. Lavaris*, 106 Wn.2d 340, 721 P.2d 515 (1986); ER 607 (permitting parties to impeach their own witnesses). Bias is a common ground for impeachment and may be proved using direct examination, cross-examination, or extrinsic evidence. *See* ROGER PARK & TOM LININGER, THE NEW WIGMORE: A TREATISE ON EVIDENCE: IMPEACHMENT AND REHABILITATION § 6.1, at 243-46 (2012); *State v. Whyde*, 30 Wn. App. 162, 166, 632 P.2d 913 (1981) ("Bias and interest are relevant to the credibility of a witness."); *United States v. Abel*, 469 U.S. 45, 52, 105 S. Ct. 465, 83 L. Ed. 2d 450 (1984) ("Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has

4

historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony."). A history of violence between the victim and the defendant would allow the jury to consider whether the victim fears the defendant and therefore may skew her testimony.

My view does not create a domestic violence exception for prior bad acts, as the majority claims. *See* majority at 9 n.3. The reasoning that supports admitting the testimony in this case applies equally to all cases where prior violence between the testifying witness and the defendant creates the potential that the witness may skew testimony based on fear of retaliation.

The evidence admitted in this case is classic impeachment evidence to prove the bias of the witness by showing that the opposing party has coerced or incentivized the witness to testify a certain way. The trial court did not abuse its discretion in admitting the evidence, the Court of Appeals correctly affirmed, and this court should do the same.

Madsen, C.J.