IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 75919-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| CHRISTOPHER DALE MCCARTY, | ) | |
| | ) | |
| Appellant. | ) | FILED: November 13, 2018 |

SCHINDLER, J. — A jury convicted Christopher Dale McCarty of domestic violence felony violation of a no-contact order (FVNCO) and attempted FVNCO. McCarty seeks reversal and a new trial, arguing his attorney provided ineffective assistance of counsel. Because McCarty cannot show prejudice, we affirm the convictions.

FACTS

Christopher Dale McCarty and I.F. were involved in a romantic relationship and had a daughter together. Sometime before March 2011, the court issued a protective order prohibiting McCarty form having contact with I.F. On April 16, 2012, McCarty pleaded guilty to two counts of domestic violence felony violation of the no-contact order. On April 20, 2012, the court issued a domestic violence no-contact order prohibiting McCarty from contacting I.F. The no-contact order was in effect from April

20, 2012 to April 20, 2017. McCarty acknowledged receipt and signed the no-contact order.

McCarty and I.F. began living together again in 2013. On September 24, 2015, McCarty tried to call I.F. on her cell phone. I.F. had turned off the cell phone while she was at work. When I.F. got home, McCarty "was really upset that he hadn't been able to get ahold of" her. He "was really angry and yelling" at I.F. McCarty grabbed her cell phone and threw it. I.F. activated a silent alarm on the home security system.

King County Sherriff Master Police Officer Dirk Graham responded. I.F. told Officer Graham that "she was having an argument with her boyfriend" and "he needed to leave." McCarty told Officer Graham his name was "Christopher McCormick." I.F. told Officer Graham that his real name was "Christopher McCarty." Because the April 20, 2012 domestic violence no-contact order prohibited McCarty from having contact with I.F., Officer Graham arrested McCarty.

The State charged McCarty with felony violation of a no-contact order (FVNCO) in violation of RCW 26.50.110(1) and (5). The information alleged McCarty had two prior convictions for violation of a protective order and on September 24, he willfully violated the terms of the April 20, 2012 no-contact order. The State alleged the crime was a crime of domestic violence.

> [T]he defendant CHRISTOPHER DALE MCCARTY in King County, Washington, on or about September 24, 2015, did know of and willfully violate the terms of a court order issued on April 20, 2012 by the King County Superior Court pursuant to RCW chapter 10.99, for the protection of [I.F.], and at the time of the violation having at least two prior convictions for violating the provisions of an order issued under RCW chapter 10.99, 26.50, 26.09, 26.10, 26.26 or 74.34 . . . .
> Contrary to RCW 26.50.110(1), (5), and against the peace and dignity of the State of Washington.

2

And further do accuse the defendant, Christopher Dale McCarty, at said time of committing the above crime against a family or household member; a crime of domestic violence as defined under RCW 10.99.020.

On December 1, 2015, I.F. received a 10-page letter in the mail. I.F. recognized McCarty's "very distinct handwriting." The letter referred to I.F. and their daughter.

In March 2016, McCarty called I.F. from the King County jail. I.F. saw the caller identification was "Christopher McCarty." I.F. did not answer.

The State filed an amended information. In addition to FVNCO on September 24, 2015, count 1; the State charged McCarty with FVNCO by sending I.F. the 10-page letter on December 1, 2015, count 2; and FVNCO by calling I.F. from jail on March 28, 2016, count 3. McCarty pleaded not guilty.

Officer Graham, I.F., and King County jail Sergeant Michael Allen testified at trial. The court admitted into evidence certified copies of the April 20, 2012 judgment and sentence for the two prior convictions of violation of a protective order, the April 20, 2012 domestic violence no-contact order, the December 1 letter, and a copy of the jail phone log.

Officer Graham testified that McCarty "appeared nervous when I was speaking with him. He was shaking." Officer Graham testified he "placed [McCarty] under arrest for the violation of the no-contact order" and said, "He also had a felony warrant."

I.F. testified she let McCarty live with her because they "had a child together and so I had wanted to try and fix" the relationship. I.F. described why she activated the silent alarm on the home security system after McCarty threw her cell phone:

> [McCarty] was really upset that he hadn't been able to get ahold of me, um, and thought for sure that I must have taken that position at that hospital with that shift so that I could cheat on him. And just was really angry and yelling at me. It was escalating to the point where he threw my

3

phone, and I got the feeling that he would hit me again. So — that had happened previously. But — so we have a panel for ADT [Security Services], and I just punched in the silent alarm, and the sheriff showed up.

I.F. said when she received the 10-page letter, she "right away recognized it was from [McCarty]. So it was anxiety inducing." I.F. testified that when she received the phone call from the jail, seeing McCarty's name on the caller identification caused "anxiety" and made her "heart raise."

On cross-examination, I.F. conceded the December 1 letter was addressed to "Attorney C. McCormick." But I.F. testified the letter was "obviously" from McCarty and "there would be no other reason to send it to me unless he wanted me to read it." I.F. testified that when she received the March 28 jail call from "Christopher McCarty," she did not answer.

Sergeant Allen testified that King County jail inmates "have to set up a phone . . . account" with "voice biometrics, and then a four digit PIN."[1] Each time an inmate places a phone call, the inmate has "to put in the account number and then your PIN[,] and then one other step is the voice biometrics." Sergeant Allen testified that the jail phone logs showed McCarty called I.F.'s cell phone on March 28, 2016 at 7:57 p.m. Sergeant Allen said McCarty was "housed in the same area where the phone call was made at the time it was made."

At the close of the State's case-in-chief, McCarty's attorney moved to dismiss the March 28, 2016 FVNCO charge because I.F. did not answer the phone. The State moved to amend the information to charge attempted FVNCO on March 28. The court granted the motion to amend the information.

---

[1] Personal identification number.

In closing argument, defense counsel conceded the jury could find that McCarty violated the no-contact order on September 24, 2015. "[T]he police show up, there had been an argument, and Mr. McCarty was there. And you certainly may find that he was in violation of the no-contact order at that point." Defense counsel argued receipt of the December 1, 2015 letter did not violate the no-contact order because McCarty "didn't send it to [I.F.]. . . . [W]e are talking about an envelope that said 'legal mail' that was sent to a particular address where Mr. McCarty lived, to the name that he has used other than his own name." Defense counsel argued the State did not prove attempted FVNCO on March 28, 2016 because "nobody saw him making the call."

The jury found McCarty guilty of FVNCO on September 24, 2015, count 1, and attempted FVNCO on March 28, 2016, count 3. The jury was unable to reach a verdict on count 2, FVNCO on December 1, 2015. As to counts 1 and 3, the jury found that McCarty and I.F. were members of the same family or household.

## ANALYSIS

McCarty seeks reversal, arguing his attorney provided ineffective assistance of counsel by not filing an ER 404(b) motion to exclude evidence that he had an outstanding warrant, and by failing to object to Officer Graham's reference to an outstanding warrant and I.F.'s testimony that McCarty previously hit her.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. Grier, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). We review claims of

ineffective assistance of counsel de novo. State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

To establish a claim of ineffective assistance of counsel, McCarty must show (1) deficient performance that fell below an objective standard of reasonableness and (2) but for counsel's errors, there is a reasonable probability that the result of the trial would have been different. Strickland, 466 U.S. at 687. If either prong of the test is not satisfied, our inquiry ends. State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

A defendant alleging ineffective assistance of counsel must overcome " 'a strong presumption that counsel's performance was reasonable.' " Grier, 171 Wn.2d at 33 (quoting State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). Counsel's performance is not deficient where it can be " 'characterized as legitimate trial strategy or tactics.' " Grier, 171 Wn.2d at 33 (quoting Kyllo, 166 Wn.2d at 863). Generally, the decision of whether and when to object is a classic example of trial tactics. In re Pers. Restraint of Davis, 152 Wn.2d 647, 714, 101 P.3d 1 (2004).

Where defense counsel does not object to evidence of prior bad acts, a defendant claiming ineffective assistance of counsel must show that the "admission of the objectionable evidence prejudiced [the defendant]'s right to a fair trial." Hendrickson, 129 Wn.2d at 78-80. We consider the "prejudicial effect of the jury's knowledge" of the defendant's prior bad acts "against the backdrop of the evidence in the record." Hendrickson, 129 Wn.2d at 80. If the remaining evidence "powerfully supports" a finding of guilt, "we cannot state that the result of the trial court would have been different." Hendrickson, 129 Wn.2d at 80.

McCarty cannot show prejudice from failure to file an ER 404(b) motion to exclude evidence of an outstanding warrant or not objecting to Officer Graham's reference to an outstanding warrant or I.F.'s testimony that she feared McCarty "would hit me again."

To convict McCarty of FVNCO under RCW 26.50.110(1) and (5), the State had the burden to prove that a valid no-contact order was in effect and prohibited McCarty from contacting I.F., that McCarty knowingly violated the order, and that he had two previous convictions for violating a protection order. To convict McCarty of attempted FVNCO, the State had the burden to prove McCarty did an act that was a "substantial step" toward the commission of the crime and "intent" to commit violation of a court order. RCW 9A.28.020.

McCarty argues the failure to object to the reference by Officer Graham to an outstanding felony warrant and I.F.'s testimony that McCarty previously hit her requires reversal. McCarty relies on State v. Gunderson, 181 Wn.2d 916, 925, 337 P.3d 1090 (2014), to argue the testimony that I.F. feared he would hit her again had a "heightened prejudicial effect." Gunderson is distinguishable.

In Gunderson, the State charged the defendant Gunderson with FVNCO that prohibited him from contacting Christina Moore in violation of RCW 26.50.110(1) and (4). Gunderson, 181 Wn.2d at 919. Moore's mother called 911 and reported that Gunderson "hit her and [Moore]." Gunderson, 181 Wn.2d at 919. To convict Gunderson of FVNCO in violation of RCW 26.50.110(4), the State had the burden of proving Gunderson assaulted Moore. Gunderson, 181 Wn.2d at 926. At trial, Moore's mother testified that the three of them were "grabbing and wrestling" but "she did not

7

see Gunderson hitting [Moore]." Gunderson, 181 Wn.2d at 919-20. Moore testified Gunderson "did not hit" her or her mother. Gunderson, 181 Wn.2d at 920. Over the defense objection, the court allowed the State to impeach Moore with evidence of two prior instances of domestic violence. Gunderson, 181 Wn.2d at 920-21. The Washington Supreme Court held the trial court abused its discretion in admitting the ER 404(b) evidence to impeach Moore because neither she nor her mother made inconsistent statements. Gunderson, 181 Wn.2d at 924-25. Because "[n]either of the two alleged victims testified that an assault occurred," admission of the evidence of prior domestic violence was not harmless. Gunderson, 181 Wn.2d at 926-27. The court concluded it was "reasonably probable that absent the highly prejudicial evidence of Gunderson's past violence the jury would have reached a different verdict." Gunderson, 181 Wn.2d at 926.

Unlike in Gunderson, McCarty cannot show absent Officer Graham's reference to an outstanding felony warrant and I.F.'s testimony that McCarty hit her before, the jury would have reached a different verdict. The overwhelming evidence "powerfully supports" the jury finding McCarty guilty of FVNCO on September 24, 2015 and attempted FVNCO on March 28, 2016. Hendrickson, 129 Wn.2d at 80. The court admitted into evidence a certified copy of the judgment and sentence of the two prior violation of a protective order convictions and a certified copy of the April 20, 2012 no-contact order prohibiting McCarty from having contact with I.F. The April 20, 2012 no-contact order unequivocally shows McCarty acknowledged receipt and signed the order. The undisputed evidence established McCarty had previous convictions for violating a no-contact order and despite the mandatory language of the April 20, 2012 no-contact

order, he had contact with I.F. on September 24, 2015. The evidence also established I.F. received a call on March 28, 2016 at "around eight o'clock at night" from "Christopher McCarty" in the King County jail. I.F. testified the caller identification on her phone showed a call from "Christopher McCarty." Sergeant Allen testified that in order to place a call from jail, McCarty had to enter information verifying his identity, and McCarty's phone logs showed a call to I.F.'s phone number on March 28, 2016 at 7:57 p.m.

We affirm the jury conviction of FVNCO and attempted FVNCO.

WE CONCUR: