IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 77957-5-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| BENJAMIN ALLEN MARTIN, | |
| Appellant. | FILED: July 1, 2019 |

CHUN, J. — After Benjamin Martin failed to report in accordance with the conditions of his community supervision, the Department of Corrections (DOC) issued a warrant for his arrest. Police set up a drug-deal sting operation, arresting Martin on the DOC warrant when he arrived at the designated meeting place. The State then charged Martin with possession of a controlled substance with intent to deliver while on community custody. A jury convicted him as charged.

Martin appeals, claiming (1) the probationer search[1] of his cell phone violated his constitutional rights because it (a) improperly bypassed the warrant requirement and (b) exceeded the permissible scope; (2) the trial court admitted

---

[1] "Probationer search" refers to the exception to the warrant requirement codified in RCW 9.94A.631(1), which provides:

> If an offender violates any condition or requirement of a sentence, a community corrections officer may arrest or cause the arrest of the offender without a warrant, pending a determination by the court or by the department. If there is reasonable cause to believe that an offender has violated a condition or requirement of the sentence, a community corrections officer may require an offender to submit to a search and seizure of the offender's person, residence, automobile, or other personal property.

evidence precluded by ER 404(b); and (3) the court should not have imposed legal financial obligations. Because any errors were harmless, we affirm Martin's conviction. Given Martin's indigency at the time of sentencing, we remand his Judgment and Sentence to the trial court to strike the $300 in legal financial obligations. The State concedes that we should strike these fees.

I.
BACKGROUND

A. The Arrest

In December 2016, Martin failed to report to the DOC, violating his community custody conditions. Consequently, the DOC issued a warrant for his arrest.

The DOC and Everett police encountered difficulty locating Martin. On December 6, 2016, Officer Anatoliy Kravchun[2] discovered a Facebook profile under the name "Benjamin Brackett," which he thought belonged to Martin. Due to the trouble in locating Martin, the police decided to try to arrest him on the warrant by setting up a drug deal. Officer Anatoliy texted the phone number on the Brackett profile seeking to purchase methamphetamine. Martin responded. Through text messages, the two agreed on an amount of methamphetamine and a purchase price for the sale. They decided to meet at an Everett thrift store.

Officers Anatoliy, Oleg, and Duane Wantland went to the thrift store in an unmarked surveillance van and waited for Martin to arrive. Officer Anatoliy told Martin he was in a Corolla. Martin came to the parking lot on foot and walked to

---

[2] Because we also mention Officer Oleg Kravchun, Officer Anatoliy Kravchun's brother, we refer to both by their first names for clarity. We intend no disrespect.

2

a Corolla. Martin began to open the Corolla's front passenger door when the officers pulled up and arrested him. Martin denied that he had gone to the thrift store to meet anyone. During the arrest, however, Martin asked who had "set him up."

A search incident to arrest yielded a bag of methamphetamine, $696 in cash, and a cell phone. As an officer removed the cell phone from Martin's pocket, the screen lit up and displayed Officer Anatoliy's phone number and the last text message he had sent. Officer Oleg activated the phone's "airplane" mode to preserve evidence. After taking photos of the cell phone's lock screen, Officer Oleg turned it off and placed it in his locker.

B. The Cell Phone Search

Nine days later, the police notified their DOC liaison, CCO Louis Mahre, that they had arrested Martin and seized his cell phone. The police asked CCO Mahre if he wanted to conduct a probationer search of the cell phone. CCO Mahre thought that, based on Martin's actions on the day of his arrest, he had reasonable cause to believe that Martin had violated his community custody supervision. Specifically, CCO Mahre thought Martin may have violated the conditions to obey all laws and not to possess controlled substances. Accordingly, he agreed to the search.

On December 15, 2016, CCO Mahre conducted a search of Martin's cell phone with Officer Oleg present. CCO Mahre discovered several text exchanges arranging sales of controlled substances. Officer Oleg took photos of the exchanges.

C. Trial

On December 23, 2016, the State charged Martin with one count of possession of a controlled substance with intent to deliver while on community custody.

Martin moved to suppress the evidence collected from his cell phone on the grounds that CCO Mahre conducted the search without a warrant and the search exceeded the permissible scope. The trial court held a CrR 3.6 hearing on June 1, 2017. Determining that the probationer search exception in RCW 9.94A.631(1) permitted the warrantless search of Martin's cell phone, the court denied his motion.

On June 16, 2017, during motions in limine, Martin moved to suppress (1) testimony that he had had a DOC warrant, and (2) the text exchanges showing drug dealing with individuals other than Officer Anatoliy. The court allowed testimony that the warrant existed, but precluded any statements that the DOC had issued it. As to the phone evidence, the court admitted other text exchanges from the day of Martin's arrest, but excluded exchanges from previous days.

Martin's trial[3] began in January 2018. In Martin's closing argument he admitted to possessing the methamphetamine, but argued that the State had

---

[3] Martin had two trials. The same trial judge presided over both trials. The second trial also maintained all rulings on motions in limine from the first trial. At Martin's first trial, the defense did not know that some of the officers were going to testify that they arrested Martin after he began to enter the Corolla. The officers had not mentioned the Corolla in their reports or their interviews with the defense. Because of the new information, the court declared a mistrial.

failed to prove intent to deliver. Accordingly, he asked the jury to convict him of the lesser included crime of possession of a controlled substance.

On January 10, 2018, the jury convicted Martin as charged. The court entered a judgment and sentence on January 22, 2018, and imposed a $200 filing fee and $100 DNA fee as legal financial obligations.

Martin appeals.

## II.
## ANALYSIS

### A. Cell Phone Evidence

Martin contends that the probationer search of his cell phone violated the Washington and United States Constitutions because the police used it to improperly circumvent the warrant requirement. He further asserts that even if the CCO could search his phone, the search exceeded the statutory scope. As an alternative argument, the State asserts that, if erroneous, the failure to suppress the evidence collected from Martin's cell phone constituted harmless error. We agree.

When a trial court commits constitutional error, an appellate court should reverse and remand for a new trial unless the prosecution can prove that the error was harmless beyond a reasonable doubt. State v. Coristine, 177 Wn.2d 370, 380, 300 P.3d 400 (2013). To meet this burden, the prosecution must convince the court "beyond a reasonable doubt that the evidence not tainted by the error is, by itself, so overwhelming that it necessarily leads to a finding of guilt." State v. Trujillo, 112 Wn. App. 390, 404 n.10, 49 P.3d 935 (2002).

Here, the cell phone search led to the admission of 12 photos[4] of Martin's cell phone. The photos depicted the text exchange between Martin and Officer Anatoliy and the two other exchanges setting up drug deals. But the trial court also admitted photos of the exchange with Officer Anatoliy from the officer's phone. Thus, the photos of this exchange from Martin's cell phone, in large part, constituted cumulative evidence.

Furthermore, the unchallenged evidence admitted at trial included the following: police located a Facebook page they believed belonged to Martin and texted the number associated with the account; officers then had a text exchange setting up an illegal drug transaction for methamphetamine;[5] Martin arrived at the chosen location for the drug deal and at the designated time; after officers arrested Martin they discovered a cell phone on his person that displayed the last text message sent from Officer Anatoliy; Martin possessed methamphetamine at the time of the arrest; and, after the arrest, Martin insisted someone had "set him up." At trial, Martin admitted to possessing methamphetamine but argued that the State could not prove intent to deliver. But the unchallenged evidence

---

[4] The court also admitted a photo of the cell phone lock screen taken during the probationer search. The State also had a photo of the lock screen taken from the day of Martin's arrest, but it did not offer this photo into evidence. Both photos show Officer Anatoliy's phone number and the last text message he had sent. The trial court determined that "[t]he initial information on the illuminated lock screen is plain view evidence, not a search." Martin does not challenge this conclusion on appeal. Thus, we do not include the photo of the cell phone's lock screen in the list of cell phone photos that Martin challenges.

[5] Martin contends the photos of the text exchanges from Officer Anatoliy's phone are "not the equivalent" of the ones on his phone. But he does not point to any difference between the photos. He says the jury would doubt the authenticity of them due to "the officers' blatant dishonesty, as shown by their conspiring to omit material facts." Though, as the trial court noted, the officers' failure to disclose the facts about the Corolla before the first trial shows that they may "have been neglectful in their duty," the record does not demonstrate the malicious conspiracy alleged by Martin. The other physical evidence corroborates the authenticity of the photos.

overwhelmingly demonstrates Martin's guilt of possession with intent to deliver. We conclude that even if the trial court erred by admitting the challenged evidence from Martin's cell phone, that error was harmless beyond a reasonable doubt.

   B. Warrant Testimony and Cell Phone Evidence Showing Prior
      Communications of Other Drug Dealing

Martin also contends the trial court erred by allowing testimony that he had a warrant for his arrest. Additionally, he claims the court erroneously admitted evidence showing his text exchanges from the day of his arrest regarding other drug deals. Assuming, without deciding, that the trial court erred, we again conclude the admissions were harmless.

Erroneous admissions of evidence under ER 404(b) require a harmless error analysis. State v. Gunderson, 181 Wn.2d 916, 926, 337 P.3d 1090 (2014). But because an error under 404(b) does not raise constitutional issues, the harmless error analysis is less demanding. Compare Coristine, 177 Wn.2d at 380 (noting the prosecution must prove harmlessness beyond a reasonable doubt for constitutional errors), with Gunderson, 181 Wn.2d at 926 (stating defendant must show that an error under 404(b) had a reasonable probability of affecting the outcome of their trial). For non-constitutional errors, an appellate court need determine only "whether, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected." Gunderson, 181 Wn.2d at 926 (internal quotation marks omitted). As discussed above, the evidence unchallenged on appeal demonstrates Martin's guilt beyond

a reasonable doubt. Thus, the trial court admitting the testimony about Martin's warrant and the prior text exchanges at issue did not materially affect the outcome of the trial.[6] We conclude any error was harmless.[7]

C. Legal Financial Obligations

Finally, Martin seeks to have the $200 filing fee and $100 DNA fee stricken from his judgment and sentence pursuant to State v. Ramirez, 191 Wn.2d 732, 739, 426 P.3d 714 (2018). Ramirez, decided after the trial court imposed the fees in this case, held that trial courts may not impose discretionary costs on an indigent criminal defendant. 191 Wn.2d at 746. Here, the trial court recognized Martin's indigence when it allowed him to pursue his appeal at public expense. The State agrees that this court should strike the fees. Accordingly, we strike the criminal filing and DNA fees from Martin's Judgment and Sentence.

Affirmed and remanded for further proceedings consistent with this opinion.

WE CONCUR:

_____      _Chun, J._

_____      _Appelwick, C.J._

---

[6] Martin argues the admission of the warrant testimony requires reversal because the limiting instruction the court gave did not eliminate the unfair prejudice. The limiting instruction provided that the jury could only consider the warrant evidence for the purpose of lawfulness of the arrest. While we agree with Martin that this was not a proper purpose for the jury to consider, we nevertheless determine that, assuming admitting the warrant testimony constituted error, the error was harmless because of the other overwhelming, unchallenged evidence of his guilt.

[7] Martin also argues that this court should reverse his conviction under a cumulative error analysis. But because we determine that any error was harmless, we reject this argument. See State v. Stevens, 58 Wn. App. 478, 498, 794 P.2d 38 (1990) (no prejudicial error). Even excluding all the evidence challenged by Martin, overwhelming evidence of guilt remains.