**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 81668-3-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| RORY THOMAS SEVERNS, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |
| | ) | |

MANN, C.J. — Rory Severns was convicted of one count of domestic violence felony violation of a court order and one count of obstructing a law enforcement officer. Severns appeals and argues that the trial court erred by proceeding with voir dire when the jury venire contained no African American jurors, and by admitting Severns's prior convictions to rebut his necessity defense. Severns raises further arguments in his statement of additional grounds. We affirm.

FACTS

Severns and Maurice Harris have known each other since 2012.[1] Both men have long-term physical and mental disabilities exacerbated by alcohol. Severns

---

[1] Severns testified that he considered Harris his husband because they had been committed to each other for long enough to be considered spouses. Severns also acknowledged that there had been a no-contact order prohibiting him from contacting Harris since 2016.

Citations and pin cites are based on the Westlaw online version of the cited material.

experiences chronic homelessness; Harris uses a wheelchair. In September 2016, a domestic violence no-contact order was issued prohibiting Severns from coming within 500 feet of Harris. Severns has on at least three occasions violated the order before his present conviction.

On June 21, 2019, Seattle Police Officer Kristopher Safranek was dispatched to investigate an incident at 22nd Avenue and Union Street in Seattle's Capitol Hill. Safranek saw Severns pushing Harris in his wheelchair and recognized them from prior encounters. As Safranek approached the pair, Severns shoved Harris's wheelchair away, telling him "you're on your own" before fleeing. Severns ignored Safranek's commands to stop, and was intercepted and arrested by other officers a few blocks away.

The State charged Severns with one count of domestic violence felony violation of a court order and one count of obstructing a law enforcement officer. The jury convicted Severns as charged.

Severns appeals.

## ANALYSIS

A. Jury Selection Process and Jury Venire

Severns argues that the trial court erred by conducting voir dire, over defense objection, because the venire panel did not include African Americans.[2] We disagree.

Jury selection for Severns's trial began. Before the jury venire panel assembled, the trial court informed the parties that it would note any venire panelist's apparent

---

[2] In his opening brief, Severns asserted a Sixth Amendment violation with Washington's jury selection process. In his reply brief and at oral argument, however, Severns appears to alter course, claiming that he is not challenging Washington's jury selection process, but the trial court's rulings over the jury venire. We address each characterization independently.

racial, ethnic, or minority status.  The court provided a detailed description of the care that it took in supervising voir dire.

The venire panel included 50 potential jurors.  Out of that 50, the trial court excused six for hardship.[3]  Of the remaining potential jurors, the trial court noted that nine were of Asian or Latinx descent, one of whom identified as Muslim, and one juror who identified as Jewish.

Defense counsel objected: "there does not appear to be any individuals [of] Africa American or Africa [descent].  I know that that is a population in King County."  The trial court responded:

> Yes, it is a population in King County.  We usually see people from the Africa American community in our panels, but not in this one.  So I note that.  But on the other hand, it would be pretty racist to deliberately assign Africa Americans to every panel, too.  We just have to work with the fact we are summoning [jurors] of color and hope that we get more of them in our panels.

### 1. Sixth Amendment

Severns first contends that the jury master list was not representative of the community in violation of the Sixth Amendment.

"By virtue of the sixth and fourteenth amendments to the United States Constitution, a criminal defendant has a right to be tried by a jury that is representative of the community."  State v. Hilliard, 89 Wn.2d 430, 440, 573 P.2d 22 (1977) (citing Taylor v. Louisiana, 419 U.S. 522, 42 L. Ed. 2d 692, 95 S. Ct. 690 (1975)).

Chapter 2.36 RCW guides the assembly of Washington jury panels.  Potential jurors are identified using a master jury list that includes registered voters and driver's

---

[3] The trial court described hardship as "a pretty high bar," applicable only if "you literally can't make the bills if you serve on this case."

license and identicard holders.  RCW 2.36.054(2).  Severns bears the burden of proof to show that the master list is not representative, excluding an identifiable population group.  Hilliard, 89 Wn.2d at 440.  To meet this burden, Severns must establish:

> (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

State v. Cienfuegos, 144 Wn.2d 222, 231-32, 25 P.3d 1058 (2001) (quoting Duren v. Missouri, 439 U.S. 357, 364, 99 S. Ct. 664, 58 L. Ed. 2d 579 (1979)).  Should Severns establish all three Duren elements, he has shown a prima facie case of a constitutional violation and "the State . . . bears the burden of justifying this infringement by showing attainment of a fair cross section to be incompatible with a significant state interest." Duren, 439 U.S. at 364.

Severns shows, and the State concedes, that he has met the first Duren element. African Americans are a "distinctive group" in the community.  Cienfuegos, 144 Wn.2d at 231-32.

Severns asserts that he has satisfied the second Duren element because a lack of African Americans in his venire panel is "not fair and reasonable in relation to the number of such persons in the community."  Duren, 439 U.S. at 364.  Severns's argument is misplaced.  While it may have been unusual that there were no African Americans in Severns's jury venire pool, this single instance is anecdotal; it does not prove that jury venires in King County are disproportionately lacking in African Americans relative to the population of African Americans in the county itself.

And Severns is "not entitled to exact cross-representation in the jury pool, nor need the jury selected for his trial be of any particular composition." Hilliard, 89 Wn.2d at 442. Rather, the constitution requires only that "the source from which juries are selected 'reasonably reflects a cross-section of the population.'" Hilliard, 89 Wn.2d at 440. Washington's method of juror selection at random from voter registration lists "has been consistently upheld as the best source of compiling a fair cross-section of the community." Hilliard, 89 Wn.2d at 440-41.

Severns also fails to establish the third Duren element—that the underrepresentation of African Americans on his jury panel was because of their systematic exclusion in the jury selection process. Duren, 439 U.S. at 364. At trial, Severns did not provide the court with any data to support this contention. Rather, Severns cites an interim report from the Washington Supreme Court's Minority and Justice Commission (the Commission).[4] Severns insists that it was incumbent on the trial court to acknowledge the problems recognized in the Commission's study. The existence of a study that recognizes the problems in Washington's jury master list, and the trial court's failure to consider the study sua sponte, fails to rise to the level of systematic exclusion necessary to establish a Sixth Amendment violation.

We acknowledge the importance of a trial by jury that is representative of the community and its role in having a fair judicial system as contemplated by the Sixth Amendment. Increasing jury diversity contributes to this fairness. Here, however,

___

[4] JURY DIVERSITY TASK FORCE, MINORITY & JUSTICE COMM'N, 2019 INTERIM REPORT (2019), https://www.courts.wa.gov/subsite/mjc/docs/Jury%20Diversity%20Task%20Force%20Interim%20Report.pdf.

Severns fails to establish that King County's method of jury selection—a method long upheld as constitutional—violates his Sixth Amendment rights.

2. Venire

Severns argues next that the trial court erred by not granting a new venire. We review a trial court's ruling on challenges to the venire process for abuse of discretion. State v. Tingdale, 117 Wn.2d 595, 600, 817 P.2d 850 (1991). A trial court abuses its discretion where it is exercised on untenable grounds or for untenable reasons. State v. Dye, 178 Wn.2d 541, 548, 309 P.3d 1192 (2013).

When a jury selection process substantially complies with the jury selection statute, a defendant must show prejudice. Tingdale, 117 Wn.2d at 600. If there has been a material departure from the statute, we assume prejudice. Tingdale, 117 Wn.2d at 600. Here, the trial court substantially complied with the jury selection statute.

Severns fails to show prejudice and, resultingly, the trial court did not abuse its discretion in conducting the venire process. On the contrary, the trial court was particularly committed to racial diversity during jury selection. The court noted every potential juror on the venire who might belong to a cognizable minority group, suggesting that it would use the information to ensure that the peremptory challenges had no connection to any juror's "minority affiliation." Although the court recognized that there were no jurors of African American descent, it remarked that King County summons jurors of that ethnicity, and it would conflict with the jury selection process to intentionally assign African American jurors to the panel. Three minorities ultimately served on the petit jury.

Severns asserts that Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), its Washington progeny, including State v. Saintcalle, 178 Wn.2d 34, 309 P.3d 326 (2013), and GR 37, apply to the trial court's conduct in venire. Severns is mistaken. Batson and its modern extensions were designed to address the conduct of individual attorneys exercising peremptory challenges, not the methods by which jury master lists are obtained or the judicial rulings during venire. Batson, 476 U.S. at 79-80. Severns does not allege that any peremptory challenges were racially motivated, nor has he cited authority applying Batson in the context of jury master lists or judicial rulings during venire. Thus, Batson is inapplicable.[5]

B. Admission of Prior Convictions

Severns next argues that the trial court erred by admitting his prior convictions to rebut the necessity defense that he had to maintain control of Harris's wheelchair to keep him from going into traffic. We disagree.

To prove the offense of domestic violence felony violation of a court order, the State had to show that Severns had been twice previously convicted for violating an order of protection. RCW 26.50.110(1), (5).[6] Defense counsel moved in limine to bifurcate the trial and instructions on prior convictions, arguing that this would best protect the presumption of innocence.

---

[5] Despite Batson's inapplicability, the trial court was nonetheless aware of Batson and GR 37 during peremptory challenges. For example, juror 2 identified as Filipino. When the State tried to use a peremptory challenge to strike juror 2, the trial court inquired into the basis, and unsatisfied with the State's response refused to allow the State to use a peremptory.

[6] The violation of a no-contact or protection order is generally a gross misdemeanor, but is elevated to a felony if the violation constitutes an assault or the defendant has twice previously violated the provisions of a similar order. RCW 26.50.110(1), (4), (5). Here, the State proceeded to trial on both predicate theories, but the trial court dismissed the assault theory for lack of evidence.

The trial court agreed that bifurcation was a good way to minimize undue prejudice assuming that the prior convictions were pertinent only as predicates, and not to facts underlying the alleged violation.[7] Later, the State moved in limine to preclude Severns from raising the affirmative defense of necessity. It reasoned that the defense was inapplicable to a charge of violating a court order. Despite agreeing with the legal analysis, the trial court still denied the motion "in an abundance of caution, because it seemed to be the only defense that was being proffered." The court simultaneously ruled that the prior convictions would be relevant to rebut the affirmative defense, precluding bifurcation.

The State offered three of Severns's guilty pleas to violating no-contact orders during its case-in-chief, and then offered three more convictions during the defendant's case-in-chief. Severns argues admission of the prior guilty pleas violated ER 404(b).

This court reviews evidentiary rulings for an abuse of discretion. State v. Hudson, 150 Wn. App. 626, 652, 208 P.2d 1236 (2009). A trial court abuses its discretion when its decision is manifestly unreasonable or rests on untenable grounds. State v. Lord, 161 Wn.2d 276, 283-84, 165 P.3d 1251 (2007)).

Evidence Rule 404(b) prohibits a court from admitting "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." State v. Foxhoven, 161 Wn.2d 168, 175, 163 P.3d 786 (2007). ER 404(b) evidence may, however, be admissible for other purposes. ER 404(b) is not designed "to deprive the State of relevant evidence necessary to establish an essential

---

[7] While bifurcation is permissible, defendants do not have a right to a bifurcated trial when the prior offenses are also elements of the crime charged. State v. Roswell, 165 Wn.2d 186, 197, 196 P.3d 705 (2008).

element of its case," but instead to prevent the State from suggesting that a defendant is guilty because he or she is a criminal-type person who would likely commit the crime charged. State v. Lough, 125 Wn.2d 847, 859, 889 P.2d 487 (1995).

Before admitting ER 404(b) evidence, a trial court "must (1) identify the purpose for which the evidence is sought to be introduced, (2) determine whether the evidence is relevant to prove an element of the crime charged, and (3) weigh the probative value of the evidence against the prejudicial effect." Lough, 125 Wn.2d at 852. This analysis must be conducted on the record. State v. Smith, 106 Wn.2d 772, 776, 725 P.2d 951 (1986). If the evidence is admitted, a limiting instruction must be given to the jury. Lough, 125 Wn.2d at 864.

The trial court ruled that the evidence was admissible to both prove the elements of Severns's alleged crime, as well as rebut his necessity defense.

To establish a necessity defense, Severns needed to prove that: (1) he reasonably believed he must violate the law to mitigate a harm; (2) the threatened harm was greater than the harm resulting from the violation itself; (3) he did not cause the threat of the harm; and (4) there was no reasonable legal alternative. State v. Ward, 8 Wn. App. 2d 365, 372, 438 P.3d 588 (2019).

In ruling that the evidence of Severns's prior convictions was probative, the trial court analyzed the convictions' relevance with each prong of the necessity defense. As for the first prong, the court stated:

> If somebody has five recent prior convictions for violating a no contact order, then that fact, the fact of the five prior convictions for violating a no contact order, or violating a court order involving the exact same person, raises questions I think for other people about whether the belief that violating a no contact order again was necessary to avoid or minimize harm was reasonable.

The trial court continued on to analyze the second prong of the necessity defense, noting:

> The existence of five prior violations of the law, as to the same person, within a fairly short amount of time, I think can raise questions in the mind of a reasonable fact finder about whether the harm sought to be avoided on this occasion was greater than the harm resulting from continuing to violate a no contact order or a court order protecting the protected person.

The trial court determined that the prior offenses had little to do with the third prong of the necessity defense. As for the fourth prong, however, the trial court opined:

> I really think that a reasonable juror could wonder if, if you knew there was a no contact order in place, a court order in place that forbade you from being within 500 feet of this person, whether there was really no reasonable alternative than to wheel him down the street in a wheelchair. That I think is a fair question.

The court determined that the prior convictions were probative for at least three prongs of the necessity defense, and provided the following instruction to the jury:

> Ladies and gentlemen, I have something in general to say to you. To the extent that you hear or see evidence about prior convictions for Mr. Severns, okay, those are only admissible for three purposes. Purpose number one you may consider that evidence for is on the issue of knowledge of the existence of a no contact order.
>
> Secondly, you can consider it as to an element of the first offense the State has charged here, felony violation of a court order. That element has to do with alleged prior history.
>
> And the third thing you can consider it for is with regard to the defense of necessity. All right. And that's all you can consider this evidence of prior convictions for, those three purposes, not for anything else. All right.

The trial court identified the purposes for which the evidence was sought to be introduced: to prove an element of domestic violence felony violation of a court order and to rebut Severns's necessity defense. On record, the court weighed the probative value against the prejudicial effect, and provided the jury with limiting instructions.

-10-

We need not determine whether the trial court abused its discretion, however, because any error would be harmless. The improper admission of evidence under ER 404(b) is not an error of constitutional magnitude. State v. Gunderson, 181 Wn.2d 916, 926, 337 P.3d 1090 (2014). Thus, the error is harmless unless "within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected." Gunderson, 181 Wn.2d at 923. An error is harmless if the untainted evidence of guilt was overwhelming. State v. Sexsmith, 138 Wn. App. 497, 506, 157 P.3d 901 (2007).

Any asserted necessity ends whenever the exigency that requires the unlawful act dissipates. United States v. Bailey, 444 U.S. 394, 412-13 n.9, 100 S. Ct. 624, 62 L. Ed. 2d 575 (1980). While testifying in his own defense, Severns admitted that he knew about the no-contact order. Severns testified that he violated the order because it was necessary to prevent Harris from jaywalking across a busy street—an act Harris often undertook while intoxicated. But Severns afterward took Harris to a nearby marijuana dispensary, and was taking him home when the pair encountered Officer Safranek. Even without the introduction of Severns's prior convictions, the jury had evidence that any exigency had ended, thus negating Severns's necessity defense.

C. Testimony on Mental Health

In his statement of additional grounds, Severns argues that the trial court erred by not considering his mental health conditions. We disagree.

Contrary to Severns's assertions, the court permitted him to testify in respect to his mental health conditions despite the State's objection. Severns testified that he suffers from "bipolar and [posttraumatic stress disorder]," and that he took part in Sound

Mental Health, which participated in "multiple facets of housing, mental health, outpatient treatment, substance abuse treatment."

While we acknowledge and respect Severns's arguments, they lack merit.

Affirmed.

_Mann, C.J._

WE CONCUR:

_Andrus, A.C.J._     _Appelwick, J._