# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  51658-6-II |
| Respondent, | |
| v. | |
| IVAN LEE AHQUIN, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, A.C.J. — Ivan L. Ahquin appeals his convictions for second degree rape, second degree assault with sexual motivation, first degree criminal trespass, unlawful imprisonment with sexual motivation, violation of a domestic violence court order, and unlawful possession of a controlled substance (methamphetamine).  Ahquin argues that (1) the trial court erred in admitting evidence of prior bad acts under ER 404(b), (2) his rape and assault convictions should have been treated as same criminal conduct when calculating his offender score, and (3) certain legal financial obligations (LFOs) that are inconsistent with the 2018 legislative amendments should be stricken from his judgement and sentence.  In a Statement of Additional Grounds (SAG)[1], Ahquin claims that (1) the trial court erred by excluding the victim's mental health history, (2) he received ineffective assistance of counsel, (3) cumulative error requires reversal, (4) his sentence was clearly excessive, and (5) the trial court erred in calculating his offender score.  We affirm

---

[1]  RAP 10.10.

Ahquin's convictions, but we remand for the trial court to strike the criminal filing fee and interest provision from Ahquin's judgment and sentence.

FACTS

A.    INCIDENT

In 2016, Ahquin and J.G.-E.[2] were involved in a dating relationship. On January 14, 2017, Ahquin broke into J.G.-E.'s apartment, strangled her, and then raped her both vaginally and anally with a curling iron. Afterward, J.G.-E. pretended to take her dog on a walk, but instead contacted her neighbor, who then called 911.

Ahquin was arrested inside of J.G.-E.'s apartment. At the time of the arrest, law enforcement removed a folding knife and a bag of methamphetamine from Ahquin's pants pocket. The State charged Ahquin with first degree rape, second degree assault with sexual motivation, first degree burglary with sexual motivation, unlawful imprisonment with sexual motivation, felony domestic violence court order violation, felony harassment, and unlawful possession of a controlled substance.[3]

B.    PRE-TRIAL MOTIONS

Prior to trial, Ahquin filed a motion in limine asking the trial court to "[a]dmit evidence of [J.G.-E.]'s prior mental health treatment, diagnosis, and prescription medication compliance." Clerk's Papers (CP) at 62. J.G.-E. was diagnosed with post-traumatic stress disorder and major

---

[2]  We use the sexual assault victim's initials to protect her privacy.

[3]  All of the charges, except the unlawful possession of a controlled substance charge, included a domestic violence allegation. The jury returned special verdicts finding none of the charges Ahquin was found guilty of were acts of domestic violence.

depressive disorder "with psychotic features" in October 2015. 4 Verbatim Report of Proceedings (VRP) at 531.

Although Ahquin conceded that there was no evidence that J.G.-E. was delusional or psychotic when the incident occurred on January 14, 2017, Ahquin argued that the evidence was relevant to show consent because J.G.-E. "comes to court with a lot of mental baggage," she was "not of right mind," and J.G.-E.'s behavior was "not indicative of a person who is mentally stable." 4 VRP at 536, 553, 534. The trial court denied Ahquin's motion.

The State also filed a pretrial motion, asking the trial court to admit evidence of prior acts of domestic violence Ahquin committed against J.G.-E. in the months leading up to the January 14, 2017 incident. Specifically, the State sought to introduce testimony regarding an October 14, 2016 incident in which J.G.-E. reported that Ahquin had strangled her for approximately five seconds and forced her to put her mouth on his penis. The State also asked the trial court to admit evidence regarding a December 30, 2016 incident in which Ahquin broke into her apartment, pinned her down, and covered her mouth.[4]

The trial court found that evidence related to the October 14 incident was "strongly probative of [Ahquin]'s intent and motive on January 14, 2017 . . . ." 2 VRP at 164. It also found that the evidence was relevant to prove that J.G.-E. reasonably feared that Ahquin's threats would be carried out on January 14, 2017. The court concluded that the probative value of the evidence

---

[4] The State also moved to allow evidence of domestic violence incidents between Ahquin and J.G.-E. that occurred on September 11, 2016, October 21, 2016, December 21, 2016, December 23, 2016, and January 13, 2017. The trial court admitted evidence regarding the January 13, 2017 incident. Ahquin does not challenge the admission of evidence related to the January 13, 2017 domestic violence incident on appeal.

substantially outweighed the risk of unfair prejudice and was admissible with a limiting instruction to the jury. The court's limiting instruction stated,

> Certain evidence has been admitted in this case for only a limited purpose. This evidence consists of the October 14th, 2016 alleged incident. This evidence may be considered by you only to the extent you find it relevant to the following issues:
>
> 1. The defendant's motive or intent as to the charge of unlawful imprisonment,
> 2. The defendant's state of mind or motive as to the charge of rape, and;
> 3. The alleged victim's state of mind as to the charge of harassment.
>
> You may not consider the evidence for any other purpose. The evidence about the defendant's alleged actions on October 14, 2016 has not been admitted, and cannot be considered, to prove the character of the defendant in order to show that he acted in conformity therewith. This evidence cannot be considered by you to prove propensity, proclivity, predisposition or inclination to commit rape or assault or unlawful imprisonment or harassment or burglary or violation of a no contact order.
>
> Any discussion of the evidence during your deliberations must be consistent with this limitation.

CP at 137.

The trial court also ruled that the evidence that Ahquin broke into J.G.-E.'s apartment on December 30 was probative to his first degree burglary charge and his motive and intent to unlawfully restrain J.G.-E. and to contact J.G.-E. despite the no contact order prohibiting him from doing so. The court found that this evidence was probative as to J.G.-E.'s reasonable fear on January 14. The court further found that the probative value of this evidence outweighed the risk of unfair prejudice, but that a limiting instruction to the jury was necessary. The court's limiting instruction stated,

> Certain evidence has been admitted in this case for only a limited purpose. This evidence consists of the December 30, 2016 alleged incident. This evidence

may be considered by you only to the extent you find it relevant to the following issues:

1. The defendant's motive or intent as to the charges of: assault in the second degree, burglary in the first degree, unlawful imprisonment and violation of a no contact order, and;
2. The alleged victim's state of mind as to the charge of harassment.

You may not consider the evidence for any other purpose. The evidence about the defendant's alleged actions on December 30, 2016 has not been admitted, and cannot be considered, to prove the character of the defendant in order to show that he acted in conformity therewith. This evidence cannot be considered by you to prove propensity, proclivity, predisposition or inclination to commit rape or assault or burglary or unlawful imprisonment or harassment or violation of a no contact order.

Any discussion of the evidence during your deliberations must be consistent with this limitation.

CP at 138.

C.     TRIAL

At trial, J.G.-E. testified that she began dating Ahquin in July 2016. On October 14, 2016, Ahquin strangled J.G.-E., violently shook her neck, and gave her a black eye. When her voice escalated, Ahquin grabbed her neck and would squeeze while telling her to "shut up." 6 VRP at 730. Ahquin also strangled her, "forced intimacy," and held her down. 6 VRP at 730-31.

Ahquin was served with a no-contact order on December 23, 2016, which prohibited him from contacting J.G.-E. On December 30, 2016, when she returned to her apartment, she found Ahquin inside. Ahquin "immediately . . . started in on [J.G.-E.] physically by pushing [her] into the chair and grabbing [her] neck," strangling her and yelling at her. 6 VRP at 738.

In the early morning hours of January 14, 2017, J.G.-E. awoke and saw Ahquin climbing though her apartment window. J.G.-E. raised her voice, and Ahquin grabbed her throat and

restricted her breathing. Ahquin then threw her onto her bed and forcefully took her clothes off. At one point, J.G.-E. said that she needed to use the restroom. Ahquin walked her to the bathroom and squeezed her throat while she sat on the toilet. Ahquin would not let J.G.-E. wipe herself; instead, Ahquin wiped J.G.-E. while keeping one hand around her neck.

When the two returned to the bedroom, a glass fell from the bedpost. Ahquin forced J.G.-E. to clean up the broken glass. As J.G.-E. cleaned up the broken glass, her legs started to get weak from being strangled and losing her strength from fighting and trying to get the defendant off her. Ahquin pulled J.G.-E.'s head back and inserted his penis in her mouth. Ahquin then picked up J.G.-E., threw her on the bed, and told her to stay there before he left the room.

Ahquin returned from the bathroom with a curling iron and penetrated her both vaginally and anally with the curling iron. Ahquin continued to strangle J.G.-E. "off and on" so that she "would shut up" during this time. 6 VRP at 784. When Ahquin was finished penetrating J.G.-E. with the curling iron, he vaginally penetrated her with his penis.

Afterward, J.G.-E. asked to take her dog outside. Ahquin permitted her to leave but told her she had to come back. Once outside, J.G.-E. asked her neighbor to call the police and then returned to the apartment.

Law enforcement officers responded to the neighbor's 911 call and arrested Ahquin inside J.G.-E.'s apartment. The officers conducted a search incident to arrest and found a folding knife and methamphetamine in Ahquin's pants pocket.

Following Ahquin's arrest, J.G.-E. consented to a sexual assault examination. At trial, the sexual assault nurse examiner testified that she observed bruising to J.G.-E.'s left upper arm, left forearm, right upper arm, and right forearm. She also documented scratches to J.G.-E.'s right hand

and right upper thigh and tenderness to J.G.-E.'s hip, head, back, and both sides of her neck. The nurse further documented a two-centimeter scratch under J.G.-E.'s jaw on the left side. Finally, the nurse noted a one-centimeter tear and to J.G.-E.'s cervix, with some slight bleeding in that area. The nurse testified that, "there would have had to have been something with an edge to be able to cause a laceration or a tear" to the cervix. 7 VRP at 975-76. The nurse also documented three small lacerations to J.G.-E.'s rectum.

Ahquin testified as follows: On January 13, J.G.-E. picked him up at his trailer and they went to her apartment. He had consensual sex with J.G.-E., and then they began to argue. After J.G.-E. calmed down, he left and went to a friend's house. Later, he received a text from J.G.-E. threatening to commit suicide. He returned to J.G.-E.'s apartment and entered by climbing up an outside wall to the window. He knocked on the window, and J.G.-E. let him in.

Once inside, he again had consensual sex with J.G.-E and they used the curling iron as part of the sex and he believed it was a sex toy. They engaged in various sex acts and they were all consensual. At one point, he asked J.G.-E. if he could use the curling iron anally and when she said no he stopped. Afterward, J.G.-E. took her dog out and then took out a box of garbage. A few minutes later, the police arrived and he was arrested. He was aware that he was violating the no contact order on multiple occasions.

The jury found Ahquin guilty of the lesser included charge of second degree rape, second degree assault with sexual motivation, the lesser included charge of first degree criminal trespass, unlawful imprisonment with sexual motivation, violation of a no contact order, and unlawful possession of a controlled substance.

At sentencing, Ahquin argued that his convictions for rape and assault encompassed same criminal conduct. The trial court stated that it was uncertain whether the jury relied on strangulation as the forcible compulsion used to commit the rape. Thus, the trial court denied the motion for a finding of same criminal conduct because there was "no question there are different elements here and therefore different intentions that are required and that were proven." VRP (March 16, 2018) at 18.

Based on Ahquin's offender score, the trial court sentenced Ahquin to a standard range sentence of 316 months to life. The trial court also found that Ahquin was indigent for the purposes of nonmandatory legal financial obligations and imposed only the $500 crime victim assessment and $200 criminal filing fee. Ahquin's judgment and sentence also included an interest provision that imposed interest on all financial obligations in the judgment and sentence.

Ahquin appeals.

## ANALYSIS

A. ADMISSIBILITY OF EVIDENCE—ER 404(b)

Ahquin argues that the trial court erred in admitting prior bad acts evidence because it was not relevant, was inadmissible propensity evidence, and not admitted for a proper purpose under ER 404(b). Here, the trial court only improperly admitted evidence of prior acts for the purpose of proving the violation of the no contact order charge, and the trial court's error was harmless. Therefore, we affirm Ahquin's convictions.

1.      Legal Principles

We review the trial court's interpretation of ER 404(b) de novo and review a trial court's

ruling admitting evidence for abuse of discretion. *State v. Arredondo,* 188 Wn.2d 244, 256, 394

P.3d 348 (2017).

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character
> of a person in order to show action in conformity therewith. It may, however, be
> admissible for other purposes, such as proof of motive, opportunity, intent,
> preparation, plan, knowledge, identity, or absence of mistake or accident.

ER 404(b). To determine if evidence of other crimes or acts is admissible under ER 404(b), the

trial court must undertake the following analysis on the record: (1) find that the misconduct

occurred by a preponderance of the evidence; (2) identify the purpose for which the evidence is

sought to be introduced; (3) determine whether the evidence is relevant to prove an element of the

charged offense; and (4) weigh the probative value against the prejudicial effect. *Arredondo*, 188

Wn.2d at 256-57.

Evidence of other crimes, wrongs, or acts is inadmissible to prove a defendant's character

or propensity to commit crimes, but may be admissible for purposes of identifying the defendant's

"motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or

accident." ER 404(b); *State v. Powell,* 126 Wn.2d 244, 258, 893 P.2d 615 (1995). However,

"[b]ecause substantial prejudicial effect is inherent in ER 404(b) evidence, uncharged offenses are

admissible only if they have substantial probative value." *State v. Lough*, 125 Wn.2d 847, 863,

889 P.2d 487 (1995).

"[M]otive goes beyond gain and can demonstrate an impulse, desire, or any other moving

power which causes an individual to act." *Powell*, 126 Wn.2d at 259. Evidence of previous

quarrels, ill-feelings, and prior threats may all be admissible to prove motive, if proving motive is relevant to the case at issue. *Id.* at 260. Evidence of prior assaults or a hostile relationship between the defendant and victim may be admissible to show motive. *State v. Baker*, 162 Wn. App. 468, 473-74, 259 P.3d 270, *review denied*, 173 Wn.2d 1004 (2011).

Intent is distinct from motive and relates to the state of mind with which the act is done or omitted. *Powell*, 126 Wn.2d at 261. However, "prior misconduct evidence is only necessary to prove intent when intent is at issue or when proof of the doing of the charged act does not itself conclusively establish intent." *Id.* at 262.

Evidence of prior bad acts is also relevant and admissible for the purpose of establishing a victim's state of mind when the victim's fear is an issue in the case. *State v. Magers*, 164 Wn.2d 174, 182, 189 P.3d 126 (2008). For charges of harassment, prior acts of violence or threats between the defendant and the victim are relevant for proving the victim had a reasonable fear of harm. *Id.*

### 2. October 14, 2016 Incident

The trial court admitted the evidence regarding the October 14, 2016 incident, in which Ahquin had strangled J.G.-E. for approximately five seconds and forced her to put her mouth on his penis, finding that it was relevant to Ahquin's motive or intent as to the charge of unlawful imprisonment, relevant to Ahquin's state of mind or motive as to the charge of rape, and relevant to J.G.-E.'s state of mind as to the charge of harassment. Ahquin argues that the trial court erred by admitting the evidence for all three of these purposes.

#### a. Unlawful imprisonment

Ahquin argues that prior bad acts were not relevant to the charge of unlawful imprisonment because motive and intent are not elements of unlawful imprisonment. But motive and intent do

not need to be necessary elements of the crime in order to be relevant to proving the charge. *See Powell*, 126 Wn.2d at 260-62.

Here, the evidence of the prior assault establishes there was a hostile, controlling relationship between Ahquin and J.G.-E. Because Ahquin claimed that he did not prevent J.G.-E. from leaving the apartment and claimed that all the acts that occurred during the January 14 incident were consensual, the prior assault where Ahquin strangled J.G.-E., held her down, and forced her to put her mouth on his penis would be relevant to proving Ahquin's motive or intent as to why Ahquin would have confined J.G.-E. Therefore, the evidence had substantial probative value to proving the unlawful imprisonment charge. Accordingly, the trial court did not abuse its discretion in admitting the evidence of the October 14 incident.

b.      Rape

The trial court also did not abuse its discretion by finding that the October 14 incident was relevant to Ahquin's state of mind or motive as to the charge of rape.[5] Again, Ahquin argues that the prior incident was irrelevant because the State did not need to prove state of mind or motive to establish the charge of rape. However, because Ahquin asserted that the acts that occurred on January 14 were consensual, evidence that tends to prove his state of mind or motivation would be relevant and have substantial probative value.

Ahquin contends that the prior incident does not show a motivation or inducement to commit additional acts of violence, assault or rape. But motive does not need to be as simple as

---

[5] Ahquin also argues that the prior incidents were not relevant to proving intent regarding rape. However, the trial court did not admit evidence of either incident for the purpose of proving Ahquin's intent regarding the rape charge.

the prior act is the reason the charged act occurred. Rather, motive can be more complex, such as a relationship in which a person's actions are driven by the desire to hurt or control another person. *See Baker*, 162 Wn. App. at 474 (evidence of prior assaults on same victim months apart admissible to show motive); *Powell*, 126 Wn.2d at 259-60 (motive includes any force, reason, or impulse that moves a person to act). Thus, the trial court did not abuse its discretion by admitting evidence of the October 14 incident as relevant to proving Ahquin's motive for committing rape.

    c.   Harassment

Finally, the trial court did not abuse its discretion by finding that the October 14 incident was relevant to prove J.G.-E.'s state of mind as to the charge of harassment. The trial court instructed the jury that Ahquin's conduct had to place J.G.-E. "in reasonable fear that the threat to kill would be carried out." CP at 181. Because the State was required to prove that J.G.-E. was placed in reasonable fear, prior incidents between Ahquin and J.G.-E. that made J.G.-E.'s reasonably fearful of Ahquin on January 14 would be relevant and have substantial probative value.

    3.   December 30 Incident

The trial court admitted the evidence of the December 30 incident, in which Ahquin strangled J.G.-E. during an argument, for the purpose of proving Ahquin's motive or intent as to the charges of second degree assault, first degree burglary, unlawful imprisonment, and violation of the no contact order. Ahquin argues that the trial court erred because motive and intent was unnecessary to prove any of these charges.

Here, Ahquin testified that J.G.-E. gave him permission to enter the apartment through the window. And Ahquin asserted that all the events on January 14 were consensual. Therefore, the

trial court did not abuse its discretion by admitting the evidence of the December 30 incident as relevant to prove Ahquin's motive or intent as to the charges of second degree assault, first degree burglary, or unlawful imprisonment.

However, the trial court abused its discretion by admitting the evidence of the December 30 incident with regard to the violation of the no contact order charge. Ahquin knew about the no contact order and that he entered J.G.-E.'s apartment with full knowledge that the no contact order prohibited him from being there. Therefore, intent and motive were not relevant to proving the charge of the violation of the no contact order in this case and had little probative value to proving the violation of no contact order charge.

The trial court also admitted the evidence of the December 30 incident with regard to J.G.-E.'s state of mind as to the harassment charge. Like the October 14 incident, J.G.-E. was strangled and assaulted during the December 30 incident. Therefore, the prior assault would be relevant to proving that J.G.-E.'s fear of Ahquin's threats on January 14 was reasonable.

4.    Harmless Error

Ahquin further argues the trial court's error in admitting the evidence of Ahquin's prior bad acts was not harmless. We disagree and hold that the improper admission of the December 30 incident to prove the violation of the no contact order was harmless.

Because the evidentiary error is not constitutional, we apply the nonconstitutional harmless error standard. *State v. Gunderson*, 181 Wn.2d 916, 926, 337 P.3d 1090 (2014). "This requires us to decide whether 'within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'" *Id.* (internal quotation marks omitted) (quoting *State v. Gresham*, 173 Wn.2d 405, 433, 269 P.3d 207 (2012)).

13

Here, the only evidentiary error that occurred was the trial court's decision to admit the evidence of the December 30 incident as relevant to Ahquin's motive and intent for the charge of violation of a no contact order. In this case, the evidence regarding both incidents would have been otherwise admissible and it was harmless as to the violation of the no contact order charge. And Ahquin admitted that he was aware of the no contact order and was aware that he was violating it. Therefore, there is no reasonable probability that the outcome would have been different if the trial court had not admitted the evidence of the December 30 incident for the purpose of the charge of violating the no contact order.

B.      "SAME CRIMINAL CONDUCT"

Ahquin argues that the trial court erred when it declined to treat his convictions for second degree rape and second degree assault as one crime because they encompassed the same criminal conduct. We disagree.

We review the trial court's calculation of an offender score de novo. *State v. Bergstrom,* 162 Wn.2d 87, 92, 169 P.3d 816 (2007). A defendant's offender score is comprised of his or her criminal history and other current offenses. RCW 9.94A.589(1)(a). The trial court presumes that two or more current offenses are counted separately. RCW 9.94A.589(1)(a). However, if the trial court finds that "some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime." RCW 9.94A.589(1)(a).

"Same criminal conduct" is defined as "two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a). All three elements must be met for the crimes to constitute the same criminal conduct. *State v. Lessley,* 118 Wn.2d 773, 778, 827 P.2d 996 (1992). The defendant bears the

burden of proving same criminal conduct. *State v. Aldana Garciano*, 176 Wn.2d 531, 539, 295 P.3d 219 (2013). A trial court's determination of what constitutes "same criminal conduct" for purposes of calculating an offender score will not be reversed absent an abuse of discretion or misapplication of the law. *State v. Haddock,* 141 Wn.2d 103, 110, 3 P.3d 733 (2000).

Here, the trial court determined that Ahquin failed to meet his burden to prove that the second degree rape and second degree assault convictions were the same criminal conduct because based on the statutory elements of the crimes, the two offenses had different intents. The trial court may rely on the statutory elements of the convicted offenses to determine whether the defendant had the same criminal intent. *State v. Chenoweth*, 185 Wn.2d 218, 221-23, 370 P.3d 6 (2016). Therefore, the trial court did not abuse its discretion by determining that Ahquin failed to meet his burden to prove his second degree rape and second degree assault convictions were the same criminal conduct. Accordingly, we affirm the trial court's calculation of Ahquin's offender score.

We affirm the trial court's finding that Ahquin's offenses were not the same criminal conduct.

C.      LFOs

Ahquin also argues that the trial court erred by imposing the $200 criminal filing fee. The State concedes that both the criminal filing fee *and* the interest provision are improper under the 2018 legislative amendments to the LFO statutes and *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018). We accept the State's concession and remand to strike the improper LFOs—the criminal filing fee and the interest accrual provision on nonrestitution LFOs—from Ahquin's judgment and sentence.

D.     STATEMENT OF ADDITIONAL GROUNDS

Ahquin raises five additional issues in his SAG: (1) the trial court denied his right to present a defense when it suppressed J.G.-E.'s mental health records, (2) he received ineffective assistance of counsel, (3) the cumulative error doctrine requires reversal, (4) his sentence was clearly excessive, and (5) a challenge to his offender score. We hold that Ahquin's SAG claims fail.

1.     Suppression and Exclusion of J.G.-E.'s Mental Health Record

Ahquin claims that the trial court abused its discretion when it suppressed and excluded J.G.-E.'s mental health records. He argues that "[t]o say that her questionable mental state was not probative or relevant" to his defense was an abuse of discretion. SAG at 7. We disagree.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. Irrelevant evidence is inadmissible. ER 402.

When determining whether evidence of prior mental health is relevant and admissible the trial court must consider "'1) the nature of the psychological problems; 2) whether the witness suffered from the condition at the time of the events to which the witness will testify; [and] 3) the temporal recency or remoteness of the condition.'" *Arredondo*, 188 Wn.2d at 267 (alteration in original) (quoting *United States v. Love*, 329 F.3d 981, 984 (8th Cir. 2003)). When the proposed mental health testimony is unrelated to a witness's ability to perceive, remember, or relate events, it is not relevant. *Id.* at 267-69. We review the trial court's decision to exclude evidence for an abuse of discretion. *State v. Lord*, 161 Wn.2d 276, 294, 165 P.3d 1251 (2007).

Here, the trial court determined that J.G.-E.'s mental health history of PTSD had no relation to J.G.-E.'s ability to perceive, remember, or relate the incident in question. Ahquin conceded that

16

J.G.-E was not suffering from delusions or psychosis at the time of the incident in question. Therefore, J.G.-E.'s mental health history was irrelevant to Ahquin's defense or to cross-examination. *Arredondo*, 188 Wn.2d at 267-68. Thus, the trial court did not abuse its discretion in determining that J.G.-E.'s mental health history was irrelevant.[6] Accordingly, Ahquin's claim fails.

2.    Ineffective Assistance of Counsel

Ahquin claims that he received ineffective assistance of counsel because his counsel failed to move to sever his rape charge from the other charged offenses. He contends that he suffered prejudice as a result and that no legitimate trial strategy could account for this failure. We decline to address Ahquin's claim because the record is insufficient for review.

The Sixth Amendment to the U.S. Constitution and article I, section 22 of the Washington Constitution guarantee a defendant the right to effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011), *cert. denied*, 574 U.S. 860 (2014). An ineffective assistance of counsel claim is a mixed question of fact and law that this court reviews de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail in an ineffective assistance of counsel claim, the defendant must show: (1) counsel's performance was deficient and (2) this deficient performance resulted in prejudice to the defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). If the defendant fails either part of this two-part test, the defendant's ineffective assistance of counsel claim fails. *Grier*, 171 Wn.2d at 32-33.

---

[6] Ahquin further argues that the trial court's error resulted in denying him his right to present a defense. Because we hold that the trial court did not abuse its discretion in excluding irrelevant evidence, we do not address this claim.

Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Id.* at 33. We engage in a strong presumption that counsel's performance was reasonable. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). A defendant may overcome this presumption by showing that "'there is no conceivable legitimate tactic explaining counsel's performance.'" *Grier*, 171 Wn.2d at 33 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 10 P.3d. 80 (2004)). The record before this court must be sufficient for this court to determine what counsel's reasons for the decision were in order to evaluate whether counsel's reasons were legitimate. *State v. Linville*, 191 Wn.2d 513, 525-26, 423 P.3d 842 (2018). If counsel's reasons for the challenged action are outside the record on appeal, the defendant must bring a separate collateral challenge. *Id.*

Here, there is nothing in the record to show why Ahquin's defense counsel decided to not move to sever the rape charge from the other charges. *See id.* Therefore, we cannot evaluate whether Ahquin's counsel acted with a trial strategy or tactic. And we cannot evaluate the legitimacy of any trial tactic that Ahquin's counsel may have pursued. Accordingly, the record is insufficient to review the claim of ineffective assistance of counsel and he must bring a collateral challenge. *See id.*

3.      Cumulative Error Doctrine

Ahquin claims that he is entitled to a new trial because the issues presented on appeal by his counsel and through Ahquin's SAG amount to a violation of the cumulative error doctrine. We disagree.

"Under the cumulative error doctrine, a defendant may be entitled to a new trial when cumulative errors produce a trial that is fundamentally unfair." *State v. Emery*, 174 Wn.2d 741,

766, 278 P.3d 653 (2012). Here, there was only one error—the admission of the December 30 incident as relevant to the violation of the no contact order. The cumulative error doctrine only applies when there is more than one error. Therefore, the cumulative error doctrine does not apply here.

4. "Clearly Excessive" Sentence

Ahquin claims that his sentence was clearly excessive. He asks the court to consider the factors that "this was a consenting sexual relationship between two people that, through the use of drugs and unconve[n]tional sex, went awry." SAG at 10. However, because Ahquin received a standard range sentence, he cannot appeal it.

Here, Ahquin received a standard range sentence. Generally, a standard range sentence cannot be appealed. RCW 9.94A.585(1). However, a defendant may appeal the procedure by which the standard range sentence is imposed, including the trial court's failure to impose an exceptional, mitigated sentence. *See State v. O'Dell*, 183 Wn.2d 680, 697, 358 P.3d 359 (2015). Because Ahquin received a standard range sentence and his assertion that the sentence is clearly excessive is unrelated to the procedure by which the standard range sentence was imposed, he cannot appeal his sentence.

5. Offender Score

Finally, Ahquin claims that he "would like to raise an issue separate and distinct from his appellate counsel[']s assignment of error" regarding same criminal conduct. SAG at 10. However, Ahquin's claim is not sufficient to inform us of the nature and occurrence of the alleged error. *See* RAP 10.10(c) ("the appellate court will not consider a defendant's statement of additional grounds

for review if it does not inform the court of the nature and occurrence of alleged errors."). Therefore, we decline to consider Ahquin's final claim.

CONCLUSION

We hold that the trial court only improperly admitted evidence of prior acts for the purpose of proving the charge of violation of the no contact order, but the error was harmless. We also accept the State's concession and hold that the trial court improperly imposed the criminal filing fee and interest provision. We find no other error. Accordingly, we affirm Ahquin's convictions, but we remand for the trial court to strike the criminal filing fee and interest provision from Ahquin's judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, A.C.J.
Lee, A.C.J.

We concur:

_____
Worswick, J.

_____
Cruser, J.