# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54141-6-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JIMMY DELA CASTILLA-WHITEHAWK, | |
| Appellant. | |

MAXA, J. – Jimmy Castilla-Whitehawk appeals his convictions for unlawful possession of a controlled substance (methamphetamine) with intent to deliver, unlawful possession of a controlled substance (heroin) with intent to deliver, and unlawful possession of a controlled substance (alprazolam). The convictions arose from information that a confidential informant provided to law enforcement regarding a drug transaction Castilla-Whitehawk intended to have with an acquaintance in a store parking lot.

After receiving the information, law enforcement located two cars in the store parking lot and detained Castilla-Whitehawk and the other individual. Castilla-Whitehawk admitted that officers would find drugs in the car he was in. The officers then obtained a search warrant for the car and discovered various controlled substances.

We hold that the trial court did not err by (1) denying Castilla-Whitehawk's motion to suppress evidence based on a lack of probable cause for the issuance of a search warrant because

the search warrant affidavit established the confidential informant's basis of knowledge, (2)

denying Castilla-Whitehawk's motion to suppress statements he made to law enforcement

because the informant's information provided a basis for his detention, (3) admitting evidence

that an eight-year-old child was present in the car because the probative value of the evidence

outweighed its prejudicial effect, and (4) instructing the jury on accomplice liability because the

evidence supported the instruction. However, we hold that Castilla-Whitehawk's unlawful

possession of a controlled substance conviction must be vacated under *State v. Blake*, 197 Wn.2d

170, 481 P.3d 521 (2021).

Accordingly, we affirm Castilla-Whitehawk's two convictions of unlawful possession of

a controlled substance with intent to deliver, but we reverse his unlawful possession of a

controlled substance conviction and remand for the trial court to vacate that conviction and for

resentencing.

FACTS

*Search Warrant*

On October 8, 2018, Sergeant Chris Packard of the Thurston County Sheriff's

Department detained and handcuffed Castilla-Whitehawk and Timothy Moreno in the parking lot

of a Ross Dress for Less store. Packard encountered Castilla-Whitehawk and Moreno because a

confidential informant (referred to as CS 959) informed him that Moreno planned to purchase

heroin from Castilla-Whitehawk at the Ross store. Packard immediately applied for a search

warrant for the vehicle Castilla-Whitehawk was in and for both men. A superior court judge

took a sworn, telephonic statement from Packard. A transcript of the statement is titled,

"Complaint for Search Warrant."

In the statement, Packard discussed in detail the fact that he has worked with CS 959 in the past and that CS 959 had provided credible and reliable information in several prior cases. Packard stated that CS 959 had provided information regarding Castilla-Whitehawk and Moreno. Packard told the judge the following:

1.  Packard knew from previous tips and investigations that both Castilla-Whitehawk and Moreno were drug dealers.

2.  That afternoon, CS 959 texted Packard and told him that he/she was driving Moreno to the Ross store to meet with Castilla-Whitehawk in order to buy a few ounces of heroin.

3.  CS 959 said that his/her car was a red Honda and Castilla-Whitehawk would be in a silver Mini Cooper.  CS 959 later texted Packard from inside the store, stating that he/she would not be coming out.

4.  Packard arrived at the Ross store and observed the two cars as described.  A person later identified as Moreno was sitting in the driver's seat of the Mini Cooper and Castilla-Whitehawk was sitting in the passenger seat.

5.  As Packard approached the car, there was an obvious odor of marijuana coming from the car and smoke was coming out of the sides of the car.

6.  Packard removed both Castilla-Whitehawk and Moreno from the car and placed them in handcuffs.  A young child also was in the car.

7. Castilla-Whitehawk was holding a fanny pack, and another officer, Officer Brett Curtright, could see some type of cellophane wrapper.  Both Packard and Curtright knew from experience that cellophane commonly is used to store narcotics.

8. After Packard gave Castilla-Whitehawk *Miranda*[1] warnings, Castilla-Whitehawk informed him that there was marijuana and "M30s" in the car. Packard knew from experience that M30s referred to prescription Oxycodone. Clerk's Papers (CP) at 26.

9. The marijuana that Castilla-Whitehawk stated would be found in the car was evidence of the crimes of possession of marijuana in a public place and reckless endangerment by smoking marijuana with a child in the car.

The judge found probable cause and authorized the search warrant.

*Search of the Mini Cooper and Castilla-Whitehawk*

Officers searched the Mini Cooper. Under the front passenger seat – where Castilla-Whitehawk had been seated – officers found a black bag with 86.2 grams of methamphetamine, 34 grams of heroin, and 34 fully and 19 partially intact alprazolam pills. Under the driver's side seat – where Moreno had been seated – police found a zippered blue pouch bag with 57.4 grams of methamphetamine, eight individually packaged bags of heroin in the total amount of 34 grams, a knife, and a digital scale with heroin and methamphetamine residue on it.

Officers searched both men. In the fanny pack that Castilla-Whitehawk had been wearing officers found $1,620 in cash and 17 Oxycodone pills that later were revealed to contain heroin. Police also seized 29 grams of methamphetamine from Castilla-Whitehawk during his transport to jail.

The State charged Castilla-Whitehawk with four counts of unlawful possession of a controlled substance (methamphetamine, heroin, Oxycodone, alprazolam) with intent to deliver. The State later dismissed the count involving Oxycodone.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

*Motion to Suppress*

Castilla-Whitehawk moved to suppress the evidence seized from the Mini Cooper and from his person. Castilla-Whitehawk argued that probable cause did not exist to issue a search warrant based on CS 959's information because the search warrant affidavit failed to specify CS 959's basis of knowledge.

Castilla-Whitehawk also moved to suppress the statements he made to Packard after being removed from his car. In that motion, Castilla-Whitehawk argued that he had been unlawfully arrested. Therefore, he claimed that the statement he made regarding controlled substances in the Mini Cooper should not have been considered for probable cause to issue the search warrant.

The trial court denied Castilla-Whitehawk's suppression motions and entered findings of fact and conclusions of law. The court concluded that probable cause supported the search warrant. The court also concluded that the informant was credible and had a basis of knowledge for the information provided. Finally, the court concluded that Castilla-Whitehawk had been properly detained.

*Motion in Limine*

Castilla-Whitehawk moved to exclude any evidence that there was a child in his car at the time of his arrest based on relevance and prejudice. The State contended that the evidence was necessary to prove the element of possession because Castilla-Whitehawk potentially could argue that the drugs belonged to the other person in the car. The State needed to show that the other person in the car was a child who would be unlikely to be in possession of drugs.

The trial court allowed admission of limited evidence regarding the child. The court did give a limiting instruction, informing the jury that they could consider the evidence only on the issue of possession.

*Trial and Conviction*

Packard testified that the quantity of drugs found in Castilla-Whitehawk's car, coupled with the money and plastic baggies found on his person, might be indicative of a low scale dealer. He stated that the digital scale found under Moreno's seat typically was used by both purchasers and dealers to weigh their drugs. Packard opined that the evidence did not indicate that Castilla-Whitehawk and Moreno were mere drug users.

Deputy J.D. Strup also testified that the 86.2 grams of methamphetamine found under Castilla-Whitehawk's seat was not a personal use amount. And Strup stated that the amount of heroin and methamphetamine found in Castilla-Whitehawk's vehicle was an amount you would not typically see on a street level user.

Following the close of evidence, Castilla-Whitehawk objected to referencing accomplice liability in the jury instructions because the State failed to charge him as an accomplice or as a principal. The court denied Castilla-Whitehawk's objection. The to-convict jury instructions for all three charges stated that the jury had to find that Castilla-Whitehawk or *an accomplice* possessed heroin, methamphetamine, and alprazolam with the intent to deliver.

The jury convicted Castilla-Whitehawk of two counts of unlawful possession with intent to deliver (methamphetamine, heroin) and one count of possession of a controlled substance (alprazolam). The trial court determined that his offender score for each conviction was 2 based on the current convictions, which resulted in a standard range sentence for the two possession

with intent to deliver convictions of 12+ to 20 months. Castilla-Whitehawk was sentenced to total confinement of 14 months.

Castilla-Whitehawk appeals the trial court's order denying his suppression motion and his convictions.

## ANALYSIS

A. VALIDITY OF SEARCH WARRANT

Castilla-Whitehawk argues that probable cause did not support issuance of the search warrant for the Mini Cooper and his person. Specifically, he argues that Packard's statement to the judge failed to show CS 959's basis of knowledge that he was going to commit a crime. We disagree.

### 1. Legal Principles

A warrant can be issued only if supported by probable cause. *State v. Lyons*, 174 Wn.2d 354, 359, 275 P.3d 314 (2012). "Probable cause exists when the affidavit in support of the search warrant 'sets forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime may be found at a certain location.'" *State v. Ollivier*, 178 Wn.2d 813, 846-47, 312 P.3d 1 (2013) (quoting *State v. Jackson*, 150 Wn.2d 251, 264, 76 P.3d 217 (2003)).

Our analysis of probable cause is limited to the four corners of the probable cause affidavit. *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). Affidavits in support of a search warrant are examined in a commonsense instead of hypertechnical manner, and doubts are resolved in favor of the warrant. *Ollivier*, 178 Wn 2d at 847.

Probable cause may be based on a confidential informant's tip. *State v. Chenoweth*, 160 Wn.2d 454, 475, 158 P.3d 595 (2007). When determining whether probable cause existed to

issue a search warrant based on an informant's information, we apply the *Aguilar-Spinelli*[2] two-pronged test. *Ollivier*, 178 Wn.2d at 849-50. This test examines whether the search warrant affidavit establishes the (1) veracity or credibility of the informant and (2) the informant's basis of knowledge. *Id.* The basis of knowledge prong "may be satisfied by a showing that the informant had personal knowledge of the facts provided to the affiant." *Id.* at 850.

The Supreme Court appears to have adopted two different standards of review for probable cause determinations. In *Ollivier*, the court stated a de novo standard of review of the issuing magistrate's determination of probable cause. 178 Wn.2d at 848. More recently, in *State v. Scherf*, the court applied a more deferential abuse of discretion standard of review. 192 Wn.2d 350, 363, 429 P.3d 776 (2018).

2. Analysis

Castilla-Whitehawk challenges only the basis of knowledge prong of the *Aguilar-Spinelli* test. Specifically, Castilla-Whitehawk claims that Packard failed to establish that CS 959's basis of knowledge that Castilla-Whitehawk and Moreno intended to engage in a drug transaction in the Ross store parking lot. We disagree.

Castilla-Whitehawk argues that CS 959 provided only innocuous information – that he and Moreno planned to meet in the Ross store parking lot. He emphasizes that such a meeting is not inconsistent with legal activity.

However, CS 959 provided more than the information that Castilla-Whitehawk and Moreno planned to meet. He/she stated that Moreno planned to purchase heroin from Castilla-Whitehawk. The judge issuing the warrant reasonably could infer that CS 959 had firsthand

---

[2]*Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), *abrogated by Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983); *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969), *abrogated by Gates*, 462 U.S. 213.

knowledge of Moreno's intended drug transaction with Castilla-Whitehawk because he/she personally drove Moreno to the Ross store in her car. This information satisfied the basis of knowledge prong and provided probable cause to search Castilla-Whitehawk's vehicle for evidence of criminal drug activity.

We hold that under either standard of review, the trial court did not err in denying Castilla-Whitehawk's motion to suppress the evidence seized under the search warrant.

B.     SUPPRESSION OF STATEMENT MADE TO LAW ENFORCEMENT

Castilla-Whitehawk argues that the trial court erred in denying his motion to suppress statements that he made to law enforcement following his arrest. However, his argument is limited to a single sentence – that his arrest was unlawful because it was based on CS 959's innocuous information. The State argues that the detention of Castilla-Whitehawk was a valid investigative detention. We agree with the State.

As discussed above, CS 959's information was more than innocuous. There was an inference that he/she had personal knowledge that Castilla-Whitehawk and Moreno planned to conduct a drug transaction. Castilla-Whitehawk does not explain why this information did not give officers probable cause to at least conduct an investigative detention, which is allowed if an officer has a well-founded suspicion that the defendant "is or is about to be engaged in criminal activity." *State v. Fuentes*, 183 Wn.2d 149, 158, 352 P.3d 152 (2015). Therefore, we reject Castilla-Whitehawk's argument.

C.     ADMISSION OF PREJUDICIAL EVIDENCE

Castilla-Whitehawk challenges the admission of evidence that there was an eight-year-old child in the Mini Cooper at the time he was meeting with Moreno, arguing it was improperly admitted as evidence of a prior bad act in violation of ER 404(b). We disagree.

1.    ER 404(b) - Other Acts Evidence

ER 404(b) prohibits a court from admitting "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith."  But such evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  ER 404(b).  This list is not exclusive.  *State v. Baker*, 162 Wn. App. 468, 473, 259 P.3d 270 (2011).  Another recognized exception is for "evidence that is relevant and necessary to prove an essential element of the crime charged."  *State v. Tharp*, 27 Wn. App. 198, 204, 616 P.2d 693 (1980).

A court may admit evidence of "other crimes, wrongs, or acts" under ER 404(b) for other purposes, as long as the court (1) finds by a preponderance of evidence that the act occurred, (2) identifies the purpose for introducing the evidence, (3) determines that the evidence is relevant to prove the crime charged, and (4) weighs the probative value of the evidence against the prejudicial effect.  *State v. Gunderson*, 181 Wn.2d 916, 923, 337 P.3d 1090 (2014).

The general rule is that the trial court's prior bad act analysis under ER 404(b) must be conducted on the record.  *Id.*  However, here Castilla-Whitehawk did not argue in the trial court that the evidence was inadmissible under ER 404(b).  Therefore, the trial court's failure to expressly address ER 404(b) is excused.  In any event, the court did provide an analysis on the record that addressed the necessary steps in determining admissibility.

We review the trial court's decision to admit or exclude evidence under ER 404(b) for an abuse of discretion.  *Id*. at 922.  An abuse of discretion is present if the trial court's ruling is manifestly unreasonable, based on untenable grounds, or based on untenable reasons.  *Id.*

2.    Analysis

The first step for determining admissibility under ER 404(b) is a finding by a preponderance of the evidence that the conduct occurred. *Id*. at 923. Castilla-Whitehawk does not dispute that the child was in the Mini Cooper when he was detained.

The second step for determining admissibility under ER 404(b) is to identify the purpose for which the evidence is being introduced and the third step is for the trial court to determine whether the evidence is relevant to prove an element of the crime charged. *Id.* The State offered the evidence to prove the element of possession. The State was concerned that if there was no evidence regarding the age of the third person in the car, a jury might believe that the drugs belonged to the third person. The court concluded that the evidence was relevant; its oral ruling emphasized that this evidence was probative as to who had access to the drugs in the vehicle.

The final step in the analysis is to weigh the probative value of the evidence against the prejudicial effect. *Id.* Here, the trial court weighed the probative nature against the potential for prejudice, which is illustrated by the discussion on the record. In addition, the record indicates the concerns of prejudice were an instrumental reason for the ruling to give a limiting instruction.

On appeal, the question is whether the trial court abused its discretion regarding its rulings on relevance and whether the probative value of the evidence outweighed the prejudicial effect. *See id.* at 922. We conclude that Castilla-Whitehawk has not met his burden of proving that the trial court abused its discretion by admitting evidence that there was a child in his back seat at the time of his drug transaction with Moreno. Such evidence was relevant and necessary to prove an essential element of the crimes charged:  possession. And any prejudice was mitigated by the court's limiting instruction.

Therefore, we hold that the trial court did not err is admitting evidence that a child was in the Mini Cooper when Castilla-Whitehawk was detained.

D.      ACCOMPLICE LIABILITY INSTRUCTION

Castilla-Whitehawk argues that the trial court erred by instructing the jury on accomplice liability because there was insufficient evidence that he *knew* that Moreno possessed the controlled substances with intent to deliver.  We disagree.

    1.    Legal Principles

        a.    Standard of Review

We review for abuse of discretion a trial court's choice of jury instructions.  *State v. Miller*, 14 Wn. App. 2d 469, 478, 471 P.3d 927 (2020), *rev. denied*, 196 Wn.2d 1036 (2021).  However, a party is entitled to a jury instruction on their theory of the case when they produce sufficient evidence to support the instruction.  *Id.*

        b.    Unlawful Possession With Intent to Deliver

Generally, it is a crime "for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance."  RCW 69.50.401(1).[3]  In order to prove unlawful possession of a controlled substance with intent to deliver, the State had to prove (1) unlawful possession (2) of a controlled substance (3) with the intent to deliver.  RCW 69.50.401(1).

A person can have actual possession or constructive possession of an item.  *State v. Reichert*, 158 Wn. App. 374, 390, 242 P.3d 44 (2010).  Actual possession requires physical custody of the item.  *Id*.  Constructive possession occurs when a person has "dominion and

---

[3] This statute was amended in 2019, and those amendments became effective July 28, 2019, after the information was filed in this case.  LAWS OF 2019, ch. 379, § 2.  Because the 2019 amendments do not affect our analysis, we cite to the current version of the statute.

control" over an item. *Id*. A person can have possession without exclusive control; more than one person can be in possession of the same item. *State v. George*, 146 Wn. App. 906, 920, 193 P.3d 693 (2008).

As a general rule, "[m]ere possession of a controlled substance, including quantities greater than needed for personal use, is not sufficient to support an inference of intent to deliver." *State v. O'Connor*, 155 Wn. App. 282, 290, 229 P.3d 880 (2010). But a finder of fact can infer intent to deliver from possession of a significant amount of a controlled substance plus at least one additional factor, "such as a large amount of cash or sale paraphernalia." *Id*.

c.    Accomplice Liability

A person is guilty as an accomplice if, "[w]ith knowledge that it will promote or facilitate the commission of the crime, he or she: (i) [s]olicits, commands, encourages, or requests such other person to commit it; or (ii) [a]ids or agrees to aid such other person in planning or committing it." RCW 9A.08.020(3)(a). The trial court's accomplice liability instruction mirrored the statutory language: "A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime he either: (1) solicits, commands, encourages, or requests another person to commit the crime; or (2) aids or agrees to aid another person in planning or committing the crime." CP at 100.

To convict under the accomplice liability statute, the State must prove that the defendant *actually* knew that he or she was promoting or facilitating the principal in the commission of the crime. *State v. Allen*, 182 Wn.2d 364, 374, 341 P.3d 268 (2015). But the State can prove actual knowledge through circumstantial evidence. *Id.* A person has actual knowledge sufficient to impose accomplice liability "when 'he or she has information which would lead a reasonable

person in the same situation to believe' that he was promoting or facilitating the crime eventually charged." *Id.* (quoting RCW 9A.08.010(1)(b)(ii)).

When considering accomplice liability in the context of unlawful possession with intent to deliver, "whether one or the other of the accomplices actually possessed the [controlled substance] is not dispositive." *State v. McPherson*, 111 Wn. App. 747, 760, 46 P.3d 284 (2002). Instead, the issue is whether the accomplice, by his presence and actions, attempted to facilitate the crime of possession with intent to deliver. *Id.*

2.    Analysis

In this case, there was sufficient evidence to give an accomplice liability instruction for the unlawful possession of controlled substance with intent to deliver charges. Both Castilla-Whitehawk and Moreno were sitting in a vehicle containing a large amount of methamphetamine and heroin. Because they had the ability to immediately take actual possession of the drugs in the Mini Cooper, they both were in constructive possession of them and that possession was not mutually exclusive. *Reichert*, 158 Wn. App. at 390; *George*, 146 Wn. App. at 920.

In addition, the jury reasonably could infer that both Castilla-Whitehawk and Moreno had an intent to deliver from the quantity of the drugs coupled with other evidence. *O'Connor*, 155 Wn. App. at 290. As both Packard and Strup testified, the quantity of drugs was greater than needed for personal use and indicative of drug dealing. Packard also observed baggies, over $1,000 in cash, and a digital scale.

Castilla-Whitehawk's actual possession of cellophane baggies and his constructive possession of methamphetamine, heroin, alprazolam, a digital scale, and a knife in close proximity with Moreno – who also was in constructive possession of these substances and

14

implements – raises a permissible inference that he used these drugs to help facilitate Moreno's possession with intent to deliver.

Castilla-Whitehawk also challenges the State's failure to specify whether either Castilla-Whitehawk or Moreno was acting as a principal or an accomplice. He claims that the State's circular suggestion that either could be the principal or the accomplice allowed the State to avoid proving knowledge. But the accomplice lability instruction clearly imposed a knowledge requirement before the jury could convict Castilla-Whitehawk as an accomplice. And because accomplice liability is not an alternative means of committing a crime, the jury need not be unanimous about whether a defendant acted as a principal or accomplice in committing a crime for which the defendant was charged. *See State v. Dreewes*, 192 Wn.2d 812, 824, 432 P.3d 795 (2019).

We hold that the trial court did not err in instructing the jury on accomplice liability.

E.     UNLAWFUL POSSESSION OF A CONTROLLED SUBSTANCE

In *Blake*, the Supreme Court held that Washington's strict liability drug possession statute, RCW 69.50.4013(1), violates state and federal due process clauses and therefore is void. 197 Wn.2d at 195. As a result, any conviction based on that statute is invalid. *See In re Pers. Restraint of Hinton*, 152 Wn.2d 853, 857, 100 P.3d 801 (2004) (a judgment and sentence is invalid on its face when a defendant is convicted of a nonexistent crime). And a conviction based on an unconstitutional statute must be vacated. *See State v. Carnahan*, 130 Wn. App. 159, 164, 122 P.3d 187 (2005) (vacating a conviction that was based on a statute that the Supreme Court held was unconstitutional). Therefore, Castilla-Whitehawk's conviction for unlawful possession of a controlled substance must be vacated.

A conviction that has been vacated cannot be included in the offender score. *See State v. Ammons*, 105 Wn.2d 175, 187, 713 P.2d 719 (1986). Therefore, Castilla-Whitehawk's offender score must be amended to not include his vacated conviction and he is entitled to be resentenced.[4]

### CONCLUSION

We affirm Castilla-Whitehawk's two convictions for unlawful possession of a controlled substance possession with intent to deliver, but we reverse Castilla-Whitehawk's conviction for unlawful possession of a controlled substance and remand for the trial court to vacate that conviction and for resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, P.J.

We concur:

_____
CRUSER, J.

_____
VELJACIC, J.

---

[4] The State argues that resentencing is unnecessary because Castilla-Whitehawk already has served his sentence. However, Castilla-Whitehawk still is on community custody. On remand, the trial court can determine whether resentencing is necessary.